## M. B. SILVEIRA *v.* L. AH LO.

### REHEARING.

ARGUED MARCH 20, 1905.          DECIDED APRIL 27, 1905.

FREAR, C.J., HARTWELL, J., AND CIRCUIT JUDGE LINDSAY IN PLACE OF WILDER, J.

OVERLEASE OR GRANT OF LAND SUBJECT TO LEASE—*rent goes with reversion, but may be severed and reserved to lessor or grantor.*

An overlease as well as a grant of land subject to outstanding leases carries with it as an incident the right to the rent thereafter accruing, but the rent may be severed from the reversion and reserved to the lessor or grantor by a clear expression of intention to that effect.

ID.—*effect of words "subject to" outstanding leases.*

A mere certificate by the overlessee that he knew of the outstanding leases and took his lease subject to them would not operate to sever the rent from the reversion and reserve it to the lessor or to postpone the commencement of the overlease until the termination of the outstanding leases, although it would relieve the lessor from liability for a breach of the covenant of quiet enjoyment so far as the outstanding leases were concerned.

ID.—*agent for lessor and overlessee when acting for lessor against lessee not presumed to be acting for overlessee also.*

Nor would the mere fact that a third person was an agent for both the lessor and the overlessee and that he caused an action to be brought on behalf of the lessor for the rent under the outstanding leases show that the overlessee was not entitled to such rent.

ID.—*lessee may refuse to pay lessor rent though overlessee has not demanded it.*

Although the lessee would be protected in paying rent to the lessor if he had no knowledge of the overlease, he would be justified in refusing to pay him when he learned of the overlease, even though the overlessee had made no demand on him for the rent.

## OPINION OF THE COURT BY FREAR, C.J.

The plaintiff executed two leases to the defendant, one to expire May 1, 1903, the other January 1, 1905, each being for fifteen years and at a monthly rental. Before the termination of these leases he executed a third lease of the same and other lands to one Mendonca to begin June 1, 1900, and to be rent free for the first four months and at a specified rental per month for the further term of fifty years. He afterwards brought this action for the rent that accrued under the first two leases from January 1, 1900, to February 28, 1902, and obtained a verdict for the amount claimed. The defendant took exceptions, which were overruled (*ante,* page 309), but a rehearing was granted (*ante,* page 466) and has been had upon the question whether the plaintiff was not precluded from recovering such rent after the commencement of the lease to Mendonca, on the theory that the right to rent to accrue under the first two leases passed to Mendonca by operation of law upon the lease of the reversion to him.

It is settled law, undisputed in this case, that a grant of land which is subject to an outstanding lease carries with it as an incident of ownership the right to the rent, although the right to the rent may be severed from the reversion and reserved to the grantor by a clear expression of intention to that effect. The same is held of an overlease, which may be considered as a transfer of a part of the reversion. 18 Am. & Eng. Enc. of Law, 2nd. Ed. 283, and cases there cited. Probably less would be required to show an intention on the part of the grantor to sever the rent from the reversion in the case of an overlease than in the case of a grant of the entire reversion. The question in this case is whether there is enough to show that the plaintiff reserved to himself the rents to accrue under the first two leases after the term of the overlease began.

What is chiefly relied upon to show such an intention is a document executed by Mendonca (on the date on which he acknowledged his execution of the lease made to him) in which

he certified that he was "aware" of the fact that three of the
pieces of land covered by his lease were then partly under the
two leases made to the defendant and partly under a lease made
to another person, and in which he "further" certified that his
lease "was granted subject to the aforementioned three leases."
We will assume that this document may be regarded as part of
the lease made to him and, if necessary, supported by the same
consideration, in other words, that the effect of the words
"granted subject to the aforementioned three leases" would be
the same as if those words had been inserted in the lease itself.
There are two theories upon which it might be contended that
these words continued the plaintiff's right to rent under the
defendant's leases after the execution of Mendonca's lease.
One is that they severed the rent from the reversion and oper-
ated as a reservation of the rent by the plaintiff or as a grant
of the rent to the plaintiff. The other is that they postponed
the commencement of Mendonca's lease until the termination
of the defendant's leases. Neither of these theories can be
sustained.

The document cannot be regarded as severing the rent from
the reversion and reserving or granting it to the plaintiff, for it
makes no reference to the rent, and is neither in the form of a
reservation of the rent by the plaintiff nor in the form of a cov-
enant by Mendonca that the plaintiff should have the rent. It
is a mere statement or certificate by Mendonca of the fact, and
of Mendoca's knowledge of the fact, that his lease was subject
to the leases then outstanding—facts that existed irrespective
of any agreement. That lease could not in the nature of things
have been made except subject, that is, subordinate, to the
leases previously made and then unexpired. This is well
brought out in the case of *Biddle v. Hussman,* 23 Mo. 597, in
which the owner of certain land, after having leased it for a
term of years, conveyed with others a portion of this land and
other pieces. It was held that the lessor or grantor could not
recover the whole of the rent, inasmuch as the conveyance of a
portion of the land carried with it as an incident a proportion-

ate part of the rent, and that a clause to the effect that the conveyance was made "subject to said lease" did not amount to a reservation of the rent to the grantor. The court said:

"The words of the clause are: 'It being understood that some of the said first parties have made leases for portions of the wharf property thereby conveyed, the terms of which have not expired, this conveyance to the city is made by the said first parties, subject to said leases now in existence.' These are not apt words of exception, reserving from the operation of the grant something that otherwise would have passed, and they do not import in their ordinary signification that the grantor thereby holds back and excepts from his grant something that the grantee would otherwise have taken under it. They refer to the condition of the grantor in reference to the land he is disposing of, and then declare that the grantee takes it subject to existing leases. That was all that the party could lawfully transfer, and, no matter what was the form of the deed, it could be effectual only to that extent. If no notice had been taken of the lease, the deed might have been considered in form a conveyance of the fee in possession, although it would have been in effect only a conveyance of the reversion; and the purpose in this clause, we think, was to make the deed in form what it was in effect; in a word, the declaration that the property is subject to an existing lease, and that the grantee takes it with that burden upon it, expresses only—what otherwise would not have been apparent—that the transaction is a transfer of the grantor's reversionary interest in the property only, and not of an estate in possession. The effect of the deed, therefore, was to divest Biddle of a proportionate part of the rent."

The words "subject to" the existing leases may be fully and most naturally explained on another theory than that they were intended to operate as a reservation of the rent, namely, on the theory that they were intended to relieve the lessor from liability on his covenant of quiet enjoyment in so far as the outstanding leases were concerned. The lessor would have been liable for a breach of that covenant in the overlease if the overlessee had taken his lease without knowledge of the defendant's outstanding leases. The certificate in question, that the overlessee was aware of such leases and took his lease subject to

them, would prevent that result. It was intended to protect or had the effect of protecting the lessor against the claims of others and not of protecting him against or in the enjoyment of his own claims. This is illustrated in *Gale v. Edwards,* 52 Me. 363, as well as in the Missouri case just referred to. In the Maine case the owners of the land conveyed the reversion "subject to" a certain lease and covenanted that the premises were free of all incumbrances "except that above mentioned" and warranted the premises against the lawful claims of all persons "except said lessees or assigns." The court held that the rent was incident to the reversion and passed with it and that the legal claim for rent was transferred to the grantee, "who, in his own name, alone, could maintain an action for it, unless it was reserved to the grantors in their deed, in language fit and appropriate for such a reservation; none such was inserted, but words only intended as a protection against the general covenants of warranty, against 'the claims and demands of the lessees,' and not the grantors' claims against them."

Likewise, the theory that these words operated to postpone the commencement of Mendonca's lease until the termination of the defendant's leases cannot be sustained. Of course, if that were the effect of these words, the right to the rent would remain in the plaintiff, for he would still have the reversion until the termination of the defendant's leases. Mendonca's lease would not, strictly speaking, be an overlease or a concurrent lease, and there would be no privity of estate between him and the defendant entitling him to the rent. The difficulty with this theory, however, is that the express terms of the overlease itself show that it was to take effect in praesenti. The habendum is "unto the lessee from the first day of June, 1900, for the term of 4 (four) months free of all rent, and for a further term of 50 years (fifty years) from the first day of October, 1900, thence next ensuing, the lessee yielding and paying during such further term of 50 (fifty) years unto the lessors the monthly rental of $225 (two hundred and twenty-five dollars) in advance on the first day of each and every month during the continuance of

this lease, the first of such monthly payments of $225 to be made on the first day of October, 1900." The other terms of the lease are in harmony with the habendum, and, indeed, emphasize what is shown by the habendum, that Mendonca's lease was to take effect before the expiration of the previously existing leases to the defendant.

The fact mainly relied on outside the certificate above mentioned, to show that the plaintiff was to continue entitled to the rent notwithstanding the overlease to Mendonca, is that one Bolte was the agent of both the plaintiff and Mendonca. But Bolte could not as agent of one make a contract with himself as agent of the other so as to bind either in the absence of consent or ratification by them, nor did he attempt to do that so far as appears. The lease itself was executed by the plaintiff and Mendonca personally and the certificate by Mendonca himself. The fact, if it was a fact, that Bolte negotiated the terms of the lease between them, would not of itself require the lease and certificate to be construed otherwise than according to their plain meaning. If Bolte was still the agent of both the plaintiff and Mendonca at the time this action was instituted, it would not follow that he was acting as agent of Mendonca in instituting the action or procuring its institution. The action was instituted on behalf of the plaintiff. Mendonca is not a party to it and was not even called as a witness. Neither is Bolte a party to the action. There is nothing to show an agreement between the plaintiff and Mendonca as to a reservation of rent; there is nothing to show that Mendonca would be estopped from claiming the rent afterwords if the plaintiff should recover it in this action. If Bolte had the action brought on Silveira's behalf merely because he thought Silveira was entitled to the rent as matter of law in general or upon his construction of the lease and certificate, it would not follow that Mendonca would be bound.

The defendant would be protected in paying rent to the plaintiff if he did not know of the overlease to Mendonca, but having such knowledge he would pay to the plaintiff at his peril. In

order to justify him in declining to pay to the plaintiff it was not necessary that Mendonca should have made demand on him or given him special notice of the overlease and that he, Mendonca, claimed to be entitled to the rent. Simple knowledge of the overlease was sufficient to justify the defendant, in order to protect himself, in refusing to pay the rent to the plaintiff. Knowledge of the overlease or grant of the reversion need not be communicated from the overlessee or grantee. It may come from any source. This follows from the very nature of rent. The transfer of the reversion or a part thereof is not an assignment of a nonnegotiable chose in action. It is a transfer of real property which carries with it the rent as an incident, and as soon as the prior lessee learns that the right to the rent has become vested in another than his lessor he can continue paying the rent to the lessor only at his peril. *Peck v. Northrup,* 17 Conn. 217, was a case much like the present so far as this point is concerned. In that case the plaintiff leased the premises to the defendants for three years. A few months later he executed a quitclaim deed of the premises to another, which deed was recorded, just as the overlease in the present case was made and recorded. He afterwards brought action against the lessee for rent. There was no proof nor was it claimed that any of the rent had been paid to the grantee or that the grantee had ever demanded payment of the rent or that he had ever given the defendants any notice that the leased premises had been conveyed to him by the plaintiff or that the defendants had any notice of such conveyance other than that furnished by the recording of the deed. The court held that the conveyance carried the rents thereafter accruing as an incident to the reversion, that the lessor could not sustain the action, that he could not avail himself of the want of notice to the lessee of such conveyance, and that the recording of the deed was sufficient notice to the lessee and every one else. Among other things, the court said:

"Neither is it competent to the plaintiff to insist, as he does, that the defendants had no notice of the assignment of the

reversion. This is entirely unlike an assignment of a chose in action, where, to perfect it, notice must be given to the debtor. The land was assigned, and the rent only as incidental; and notice of the transfer of the land was given to the defendants and everybody else, by the recording of the quit-claim deed. More than this—no one but the defendants can complain of the want of notice. If the deed had not been recorded, and if the defendants had paid the rent to the lessor, without notice of the assignment, they might well complain, if afterwards sued for it by the assignee."

In one case, it is true, namely, in *Gray v. Rogers,* 30 Mo. 258, the court seemed to take a different view and implied that the lessee could not set up a grant of the reversion in defense of an action for the rent by the grantor or lessor unless the grantee had notified him that he, the grantee, claimed the rent. That case differed from this in its facts in several respects but, if not sufficiently to distinguish it from this case, it is contrary to the general run of authorities and inconsistent with the reason upon which the rule that the rent goes with the reversion is based. The court seemed to have the impression that the matter of the rent was one solely between the grantor and grantee and that it was purely gratuitous on the part of the lessee to fight the battles of the grantor and grantee. The lessee, however, in defending against the grantor was not fighting for the grantee; he was fighting for himself—to avoid being compelled to pay the grantor first and the grantee afterwards. If he paid the wrong man, that would not prevent the right man from compelling him to pay a second time. It would be his legal right to decline to pay anyone but the proper claimant.

In the absence of proof of any agreement or conduct on the part of the overlessee that would prevent him from recovering the rent from the defendant, it must be held that the lessor is not entitled to the rent. The defendant should not be required to pay the plaintiff when he may be called upon to pay Mendonca. It may be that evidence can be produced on a new trial which will show that the plaintiff is entitled to the rent.

Accordingly, the former decision overruling the exceptions is reversed, the verdict set aside and a new trial ordered.

*A. G. M. Robertson* for plaintiff.

*Castle & Withington* for defendant.

OPINION OF HARTWELL, J., CONCURRING IN REVERSAL OF DECISION.

The law involved in this case is so clear that I am not aware that the court at any time felt any doubt about it; but at the rehearing it appeared that a majority of the court had considered the admissibility rather than the legal effect of Mendonca's written statement that he was aware of Ahlo's leases and that his own was subject to them. I had myself inferred, and I thought that my associates had also inferred from the statement and from the other facts in the case that when the plaintiff made his lease to Mendonca, each being represented by Bolte, they expected that Ahlo in his own interest would shortly surrender his leases and agreed that meanwhile Mendonca should neither take the Ahlo rent nor pay rent himself. The case still looks that way to me, but rather than risk making Ahlo liable both to Mendonca and to the plaintiff I concur in the reversal of the former decision.