## PILLOT et al. v. CITY OF HOUSTON.

### No. 9757.

Court of Civil Appeals of Texas. Galveston.
May 19, 1932.

Rehearing Denied June 16, 1932.

Ernest H. Folk, Wolters, Blanchard & Woodul, and Campbell, Myer & Foster, all of Houston, for appellants.

Sam Neathery and William D. Orem, both of Houston, for appellee.

PLEASANTS, C. J.

The judgment from which this appeal is prosecuted was rendered in a condemnation proceeding instituted by the appellee to take from appellants for street purposes a strip of land 80 feet wide and 416.85 feet long through a tract of 4.75 acres owned and occupied by appellants for business purposes in the city of Houston. The strip of land sought to be condemned contains 33,348 square feet. The situation of the 4.75-acre tract out of which the strip in controversy is sought to be taken, the uses to which it is being put by appellants, and a brief résumé of the proceedings are thus clearly and accurately stated in appellants' brief:

"About eight years before the institution of this proceeding, appellants purchased 4.76 acres of land located in the South End District of Houston, approximately two blocks south of McGowen Street and bounded on the east by Main Street and on the west by Milam Street. This tract when purchased by appellants was in the form of acreage without any streets running through it and without any easements existing or claimed through or over it, in fact the said 4.76 acres was enclosed by a fence and was being used by the owners as a cow pasture when they sold it to appellants.

"Appellants, after purchasing this tract of land, proceeded to lay out and build thereon a large retail grocery establishment with large parking areas for automobiles in connection therewith, this being one of the first, if not the very first institution of its kind in this country. Appellants laid out and paved entrances and exits into their property; two of said entrances and exits lead into Milam Street and one of said entrances and exits leads into Main Street, and one of said entrances and exits leads north from the store

building to the south end of Travis Street where it adjoined appellants' property. At this point, that is, where the south end of Travis Street adjoined appellants' property, a wooden gate was erected and maintained across the said entrance and exit. Appellants built a large store building near the center of their said 4.76 acres and provided large paved parking areas for the accommodation of their customers' automobiles, the said parking areas being in front of and to each side of their said store. During the day time the gate across the south end of Travis Street above referred to was left open so that customers could enter in their automobiles for the purpose of trading at the appellants' grocery store, but during the night time; this gate was kept closed. On the south side of appellants' said tract of land where it adjoined the north end of Travis Street was erected a permanent wooden fence with a large sign painted thereon, reading as follows: 'Private Property—This Street Not Open.' Appellants had ever since the establishment of their said South End Grocery Store operated it successfully and profitably with the north gate leading into the south end of Travis Street open every day during the day time and closed every night during the night time, and with the said fence across the north end of Travis Street where it adjoined the appellants' property.

"On or about the 26th day of March, 1928, appellee City of Houston, deciding to open Travis Street through appellants' property, commenced negotiations with appellants with the end in view of purchasing the 33,348 square feet of land required for the opening of Travis Street, but as appellee and appellants were unable to agree upon the value of the land which the appellee City required, the appellee on August 26, 1930, filed a petition with the County Court of Harris County asking that Commissioners be appointed to assess the value of the 33,348 square feet described in said petition, and the damage, if any, which would result to appellants by reason of the taking of said 33,348 square feet of land belonging to them. Thereafter, the County Court appointed special commissioners to decide the value of the 33,348 square feet of land desired by the appellee for street purposes and the damages, if any, that would accrue to appellants by reason of the taking of said 33,348 square feet of land.

"The said commissioners, after due hearing, on November 10, 1930, made an award fixing the value of said land and the damage to the remainder at $100,000.00.

"Both appellants and appellee within ten days after the award of commissioners filed exceptions to the award and appealed to the County Court. Appellants admitted in the court below appellee's right to condemn, and were thereupon given the right to open and close the evidence and argument.

"The case was tried before the County Court at Law of Harris County by a jury, and submitted on special issues. The jury found that the value of appellants' 33,348 square feet of land being condemned by appellee was $49,000.00, and that appellants' remaining property would be benefited by the taking. The jury's verdict was returned June 6, 1931, and thereafter upon the motion of appellee the Court entered judgment that appellee recover the land described in its petition for public street purposes, and that appellants recover of appellee the sum of $49,000."

Appellants assail the judgment on numerous grounds, but we do not deem it necessary in this opinion to consider and discuss in detail all of the 22 assignments and propositions presented, and will content ourselves with a decision of the assignments and propositions which we think material in the determination of the appeal, or the decision of which may be useful in view of another trial in the court below.

The first proposition presented is as follows: "Where land being condemned is owned jointly by several persons or where several persons own different estates therein, the County Court in condemnation proceedings must apportion the compensation among the several defendants, and where the Court could do so but fails to apportion the compensation, then there is reversible error."

 We cannot agree with appellants' contention that the failure of the verdict to apportion the damages among the owners of undivided interests in the 4.76 acres of land out of which the strip sought to be condemned was taken was error requiring a reversal of the judgment. No objection was made by appellants to the charge of the court, which only submitted to the jury the question of the value to appellants jointly of all of the land to be taken by appellee. There is nothing in the pleadings or evidence in the case from which the jury or court could have found that there was any difference in the proportionate value of the undivided interest of any of the appellants in this land.

By their joint written admission. filed in the case, by which they claimed and were accorded the right to open and close the argument on the trial, appellants agreed in effect that the only issue in the case was the value as a whole of the land which appellee asked to be condemned for street purposes. This written admission, which is signed by the attorneys for all the appellants, after admitting the right of appellee to condemn the land, recites that "the only issues between plaintiff and defendants are the value of the property taken and the damage to these defendants' property adjoining that which is being condemned by plaintiff, and defendants here now having filed this, their written

admission as to such issues, demand the opening and closing of the case, both in the introduction of testimony and the argument of the case." Under this admission appellants assumed the burden of producing all the evidence necessary to establish the value of the separate interests of each ·of them in the land if they, or any of them, desired to have the value of the land as a whole apportioned to them separately, and, having failed to produce such evidence, they cannot complain of the failure of the judgment to make such apportionment. Gulf, C. & S. F. Ry. Co. v. Brugger, 24 Tex. Civ. App. 367, 59 S. W. 556.

Upon this state of the record we do not think the holdings in the cases of City of Paris v. Tucker, 101 Tex. 99, 104 S. W. 1046, and Walsworth v. S. A. & A. P. Ry. Co. (Tex. Civ. App.) 10 S.W.(2d) 194, are controlling or applicable.

■ The second proposition complains of the following statements in the closing argument to the jury of one of the attorneys for appellee: "Mr. Pillot is rich and has made all of his money out of the citizens of Houston, and if he were a good citizen, he would have donated the land to the city for a street and would not have fenced up the end of the street as he did do for the sole purpose of forcing the city to condemn the property and pay an exorbitant price therefor."

The impropriety of this argument and its probable harmful effect against appellants in the mind of the jury are manifest. Whether Mr. Pillot is rich or poor, and wherever or however he may have made his money, cannot be properly considered in determining the value of property taken from him by the city for use of the public, nor did his failure to donate his property for street purposes justify the imputation that he was not a good citizen, or that he was trying to force the city to pay an exorbitant price therefor. This argument was promptly objected to by appellants on the grounds that it was calculated to prejudice the minds of the jury against the appellants, and that the fact statements made therein were not based upon any evidence adduced in the case. The trial court overruled this objection and refused to instruct the jury, at the request of appellants, to disregard these statements of the attorney and his arguments thereon. It is hardly necessary to cite authorities to sustain the proposition that this character of argument is improper, and, unless the court can say that upon all the evidence in the case it could not have been prejudicial to the appellants the judgment complained of should be reversed.

The only qualification made by the trial judge to appellants' bill of exceptions which sets out the argument, the objection of appellants thereto, the action of the court allowing the statements and arguments of the attorney to go to the jury over appellants' objections, and refusing thereafter to grant appellants' motion to instruct the jury to disregard the argument, is that the court instructed the jury as follows: "Gentlemen of the Jury: You will be governed by the evidence in this case. Argument of counsel is not evidence. You will recall the testimony."

■ It cannot be held that this general instruction cured the argument of its harmful prejudicial effects. To so conclude would be as unreasonable as to suppose that straining would remove the impurities of contaminated milk. Blohm v. Krueger (Tex. Civ. App.) 297 S. W. 596; Davis v. Hill (Tex. Com. App.) 298 S. W. 526; Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765; Floyd v. Casualty Co. (Tex. Com. App.) 24 S.W.(2d) 363; Guardian Securities Corporation v. Michael Mahoney et al. (Tex. Civ. App.) 49 S.W.(2d) 963; Missouri-Kansas-Texas Ry. Co. v. Thomason (Tex. Civ. App.) 3 S.W.(2d) 106; 3 Texas Jurisprudence, § 883.

The other questions presented which we regard as material relate to the charge of the court instructing the jury as to the method by which they should determine the value of the strip of land sought to be condemned, to the rulings of the court on the admission of evidence as to the value of this strip of land, and as to the damage which its taking will cause appellants in their ownership and use of the remainder of the tract.

We will discuss and decide these questions without going into detail as to the objections and propositions presenting them, further than may be necessary to make plain the points decided.

■■ In submitting the question of the value of the strip of land before described, the court instructed the jury "that in arriving at the value of said strip of land, so described, you shall take into consideration that it is a part of a certain piece of land owned by the defendants and of which it forms a part." It seems clear to us that this instruction is too indefinite in its terms to properly inform the jury of the correct rule for arriving at the value of the strip of land. The jury should have been instructed that in arriving at the value of the strip of land they should first ascertain the market value of the entire tract of appellants' land across which the strip was to be taken, without considering the value of the improvements thereon, for any use for which it was reasonably adaptable, and to fix the value of the strip at its proportionate part of the value of the whole. It would be inadequate compensation for the taking of appellants' land to fix its market value as a narrow strip of land inaccessible to any public way or street except at each end, and of such width and length as to materially affect the uses to which it would be adaptable, and as a consequence its marketable value.

This erroneous method of arriving at the

market value of the strip of land sought for street purposes was shown by the testimony of several of the witnesses for appellee to have been followed by them in fixing the amount which they testified was the fair market value of the strip. We think appellants' objection to this testimony should have been sustained.

■ Appellants and appellee agree that the statement in the case of Watkins v. Hopkins County (Tex. Civ. App.) 72 S. W. 872, 873, that "where part of a tract of land is condemned the owner is entitled to recover the market value of the land actually appropriated at the time it is condemned, and such damages, if any, as depreciates the value of the remainder for the uses to which it was adapted and to which he applied it," is a correct statement of the measure of damage in such cases, and only disagree as to the method of applying this rule in the instant case. It may be difficult in some cases to clearly discern the line of demarcation between evidence affecting the market value of the portion of the larger tract which is sought to be condemned, and evidence affecting the damages caused the remainder of the tract by its depreciation in value because of the taking away from the owner of the condemned portion of the tract, but we do not think this case presents difficulty of this kind when the correct rules of evidence for establishing the amounts of the two items or elements of damage are correctly understood and applied. We think the just and fair rule for fixing the market value of the land taken is, as before said, to find the market value of the tract for any purpose to which it is reasonably adapted and give the portion its proportionate value thereof, unless the land taken was especially adaptable for uses separate from uses to which the whole is adaptable which enhanced its proportionate market value beyond that of the whole tract, in which case the owner would be entitled to recover such enhanced market value. The purpose of the Constitution and of our condemnation statute is to require the condemnor to compensate the owner by paying the full and fair market value of the land taken. We think this purpose can only be accomplished in cases of this kind by following the rule above indicated.

■ We agree with appellee that appellants should not be permitted to recover as a separate item of damage the cost of remodeling and rearranging the improvements on the remainder of the tract occupied by their mercantile business. Parker County v. Jackson, 5 Tex. Civ. App. 36, 23 S. W. 924.

■ Evidence of such costs and expenses was admissible, and should be considered by the jury in fixing the amount of damage to the remainder for the uses to which appel-lants were applying it. Sutherland on Damages, vol. 4, p. 1073; 2 Lewis on Eminent Domain (2d Ed.) § 503F.

If any other error is shown by appellants' assignments and propositions, it is not deemed material or likely to occur upon another trial.

For the errors indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.