## STATE v. BLAIR et al.
### No. 3066.

Court of Civil Appeals of Texas. El Paso.

June 7, 1934.

D. E. Mulcahy, Co. Atty., and S. A. Sackett, Asst. Co. Atty., both of El Paso, for the State.

M. V. Ward and S. P. Weisiger, both of El Paso, for appellees.

PELPHREY, Chief Justice.

This is a condemnation suit instituted in the name of the state of Texas, acting by and through the commissioners' court of El Paso county, Tex. Mrs. Blair, a widow, was the owner in fee simple, subject to certain liens, of 1.212 acres of land adjacent to state highway No. 1 between the town of Ysleta, Tex., and El Paso, Tex. For the purpose of widening said state highway No. 1, a strip of land 11.5 feet wide was needed along the entire length of Mrs. Blair's property, or a distance of 181 feet. The state, acting through said commissioners' court, offered Mrs. Blair and the lienholders the sum of $150 in payment of the strip, consisting of .048 acre of land. This offer she refused. The court then appointed special commissioners under article 3264, R. S., who, after notice and a hearing, found the value of the strip to be taken and damages to the remainder to be $750. Their report was filed with the judge of the county court at law of El Paso county, and Mrs. Blair filed objections to the award as made, and had process served upon the adverse parties returnable to the January term, 1933, of the county court at law.

Mrs. Blair, in answer to the petition of appellant, demurred generally thereto, denied generally the allegations thereof, and in a special answer alleged that she was a widow; that the property owned by her was her homestead, occupied and used by her and her unmarried daughter as such; that she was also using it in conducting a tourist camp;

that the strip sought to be condemned was a portion of such homestead on which was located an up-to-date tourist camp and oil and gas station; that the buildings on the premises were modern and built of good new material; that the condemning and taking of the strip by appellant would destroy the usefulness of the remainder of her property as a home and a tourist camp and would necessitate the tearing down, setting back, and rebuilding in order to restore the premises to their present condition and value, at a cost of $6,908; and that her total damages, including the value of the land, cost of rebuilding, etc., would aggregate $7,865.06.

Issues, together with explanatory instructions, were submitted and answered as follows:

"Question No. 1: What was the market value of the strip of land owned by Lou M. Blair at the time it was condemned for highway purposes by the State of Texas? Answer in dollars and cents.

"Answer: $155.00.

"You are instructed that the term 'market value' is the price which the property will bring when it is offered for sale by one who desires, but is not obliged to sell it, and is bought' by one who is under no necessity of having it."

"Question No. 2: Do you find that the remaining portion of the tract of land owned by Lou M. Blair suffered any decrease in market value by reason of the appropriation by the State of Texas of the strip in question for highway purposes? Answer 'yes' or 'no.'

"Answer: Yes.

"If you have answered Question No. 2 'yes' then, but not otherwise, answer the following question:

"Question No. 3: What do you find is the decrease, if any, in the market value of such remaining portion of the tract of land owned by Lou M. Blair? Answer in dollars and cents.

"Answer: $2,000.00.

"The term 'remaining portion of the tract of land' as used in this charge, means not only the remaining ground itself, but all improvements thereon.

"In arriving at your answer to Question No. 3, you are instructed that the decrease, if any, in the market value of said remaining portion of said land, as the term 'market value' has been herein defined to you, is the difference between the market value of the same immediately before the appropriation thereof by the State of Texas, and the market value thereof immediately after the appropriation.

"In determining the decrease, if any, in the market value of said remaining portion of land, after the condemnation and appropriation of the strip in question, you will take into consideration the purposes for which said property was adapted, as a whole, before such appropriation, and the purposes for which such condemnation and appropriation of said strip of land was made, and the purposes to which the remaining portion may be adapted, after such condemnation, and the effects, if any, such condemnation and appropriation of the strip in question will have upon the improvements located on the remaining portion, in view of the purposes and uses to which such improvements are, and may be, adapted. You will also consider, in arriving at your said answer, any special increase, or decrease, in the market value, if any, peculiar, alone, to said remaining portion of land, resulting from such appropriation of said strip of land and the purposes for which the same was condemned, but you will not consider any increase, or decrease, in the market value of said remaining land, if any, that is enjoyed or suffered by the community generally, resulting from the improvements made to said Highway No. 1 in that locality."

Upon the above findings the court rendered judgment vesting title to the strip of land in the state of Texas; for Mrs. Blair in the sum of $2,155, with interest; and in favor of the lienholders against Mrs. Blair in the several amounts set out in the judgment.

Upon appellant's motion for a new trial being overruled, this appeal resulted.

### Opinion.

Appellant objected to the explanatory portion of the court's charge in which the court instructed the jury as to how the decrease in market value of the property was to be arrived at.

The objections urged are that it constituted a comment on the weight of the evidence, emphasized certain evidence and the value thereof, and was a general charge.

■ Appellees, on the other hand, contend that the instruction is not a comment upon the weight of the evidence, but is merely a compliance with the requirements of the statutes governing the manner of arriving at the decrease in the remaining portion of land in condemnation suits. We fail to see how the charge can be said to be either a comment on the weight of the evidence or to emphasize any portion thereof.

■ Article 3265, subd. 3, as to the rule of damages in condemnation suits, reads: "When only a portion of a tract or parcel of a person's real estate is condemned, the commissioners shall estimate the injuries sustained and the benefits received thereby by the owner; whether the remaining portion is increased or diminished in value by reason of such condemnation, and the extent of such increase or dimination (diminution) and shall assess the damages accordingly."

The instruction complained of seems to us to be merely a guide laid down for the jury in conformity with the above rule. It cannot therefore be said to be a general charge. In fact, it was held in the case of Texas Public Utilities Company v. Bass (Tex. Civ. App.) 297 S. W. 301, that the trial court erred in failing to follow the wording of the statute in instructing the jury as to the measure of damages.

It is revealed by the evidence that the taking of the 11.5-foot strip from Mrs. Blair's land left a space of 20.4 feet between the line of the highway and the front of the garages used by her in the tourist camp, and that there were about 5 feet left between the gasoline pump and the new highway line.

Appellees, in view of such facts, introduced testimony to show that the use of the remainder of her property as a tourist camp and oil and gas station had been materially interfered with by the taking of the strip in question; that is, that the reduction of the space between the front of the garages and the highway line had made it impossible for an automobile to be backed out of the garages without backing upon the highway, and that it was impossible for an automobile to stop by the gasoline pump without extending onto the highway.

In attempting to show to what extent the remainder was damaged by such conditions, evidence as to the cost of moving the buildings and pump farther away from the highway was introduced over appellant's objection. Error is here assigned to the introduction of such testimony. The assignment is not, in our opinion, well taken.

In 10 R. C. L. § 135, p. 153, it is said:

"When part of a parcel of land is taken by eminent domain, the owner is not restricted to compensation for the land actually taken; he is also entitled to recover for the damage to his remaining land. In other words, he is entitled to full compensation for the taking of his land and all its consequences; and the right to recover for the damage to his remaining land is not based upon the theory that damage to such land constitutes a taking of it, nor is there any requirement that the damage be special and peculiar, or such as would be actionable at common law; it is enough that it is a consequence of the taking."

■ It is well settled in this state that the owner of land may recover the amount the value of his remaining land is decreased by the taking of a portion thereof. Allen v. Ry. Co. (Tex. Civ. App.) 25 S. W. 826; Giersa v. Dennison & P. S. Ry. Co. (Tex. Civ. App.) 45 S. W. 925; Dallas Terminal R. & Union Depot Co. v. Mosher Mfg. Co. (Tex. Civ. App.) 60 S. W. 893; Kirby v. Panhandle & G. R. Co., 39 Tex. Civ. App. 252, 88 S. W. 281, 282; City of Mart v. Hasse (Tex. Civ. App.) 281 S. W. 318; and it appears that for the purpose of showing such decrease in value any evidence bearing thereon is admissible.

In Central Power & Light Co. v. Willacy County, 14 S.W.(2d) 102, the San Antonio Court of Civil Appeals held that the light company could recover the value of its easement, the value of such improvements as could not be removed, and the reasonable expense of removing such property as could be salvaged.

In Hall v. Wilbarger County (Tex. Civ. App.) 37 S.W.(2d) 1041, 1047, it was held that inconvenience and expense of building a crossing over highway to pass from one tract of land to other were elements to be considered in assessing damages. In this case the property was a farm, and the court, in passing upon the correctness of an issue as to the difference in the market value of the remainder of the owner's land before the highway was built and afterwards, said: "The question to be determined in this case is whether the usable value of the land as a farm has been increased or diminished by the building of the road."

In Anderson v. Wharton County, 27 Tex. Civ. App. 115, 65 S. W. 643, appellant was allowed the sum of $385, which amount the evidence showed would be the cost of building a fence made necessary by the building of a road.

In Dulaney v. Nolan County, 85 Tex. 225, 20 S. W. 70, and Bexar County v. Herff (Tex. Civ. App.) 23 S. W. 409, it was held that damages resulting to the owner's land from the necessity of his having to remove his fence should have been set off against the enhanced value of the tract.

In State v. Lowrie, 56 S.W.(2d) 676, the Austin Court of Civil Appeals in its original opinion held that it was error to permit the

owner of land to prove the cost of moving his house across the highway to where his other improvements were located, but, on motion for rehearing, the court concluded that it was in error in so doing and said that such cost was an item which the jury was entitled to consider in arriving at the damages to the land not taken. In discussing the question as to building additional fences on the land, Lewis, in his work on Eminent Domain (3d Ed.), at pages 1316 and 1317, says:

"Where by taking a part of a tract additional fencing will be rendered necessary in order to the reasonable use and enjoyment of the remainder, as it probably will be used in the future, and the burden of constructing such additional fence is cast upon the owner of the land; then the burden of constructing and maintaining such fence insofar as it depreciates the value of the land, is a proper element to be considered in estimating the damages. * * *

"If, in view of the probable future use of the land, additional fencing will be necessary, of which the jury or commissioners are to judge, and the owner must construct the fence if he has it, then the land is depreciated in proportion to the expense of constructing and maintaining such fencing. * * * The allowance should be for the depreciation of the land in consequence of the burden thus cast upon it. Evidence of the cost of suitable fencing is competent as affording a means of arriving at the extent of the burden."

The Court in West Chicago Masonic Association v. Chicago, 215 Ill. 278, 74 N. E. 159, in a case where the front part of a building and lot was taken to widen a street, said: "In determining the amount of damages, the jury must either consider the remainder worthless and allow the value of the whole building, or consider what could be done with the remainder, and the cost of doing it."

The identical question here presented was before the Appellate Division of the Supreme Court in New York in New York Cent., etc., R. Co. v. Newbold, 166 App. Div. 193, 151 N. Y. S. 732, and that court held that evidence as to the cost of reconstructing buildings on the uncondemned remainder of a tract might be considered in arriving at the amount of depreciation.

■ These authorities are cited for the purpose of showing what a wide latitude has been given the owner of land to prove up his damages in cases where his property is taken for public use and in support of our conclusion that the evidence as to the cost of moving the buildings on the remainder of the tract here in question was competent to show the extent of the depreciation in value of such remainder.

■ Nor can we agree with appellant that the physical facts show, as a matter of law, that the moving and remodeling of the buildings was unnecessary.

There is ample evidence to the effect that the usableness of the premises as a tourist camp and gasoline station was decreased, and we cannot say that such question, from the evidence, was not a question about which reasonable minds might differ.

■ J. B. Paden, who testified that he had been dealing in valley lands exclusively for twenty-three years, testified as follows as to the value of the land in question:

"I heard the testimony here that land could be bought for $1,500.00 in that immediate district. That is true if you were to buy ten or fifteen or twenty acres, but you could not go along and pick up an acre. There was only one acre at that time that you could pick for that money, next door to the Community Center. There is one tract there, and it is very hard to sell a tract next to a church or school or anything of that kind and that tract was priced at $1,500.00; but other single acres ran around $2,000.00, and I got as high as $2,300.00 for individual acres. That is, as far as I live, which is three miles below. * * *

"Q. As you come towards El Paso, the land becomes more valuable? A. Yes, in the mechanic's district it ran as high as $3,500.00, which would make your replacement value around $7,500.00 or $7,600.00."

The evidence, we think, is sufficient to support the jury's finding that the value of the strip taken was $155, and we therefore cannot agree with appellant's assertion that the undisputed evidence showed its value not to exceed $1,500 per acre.

■ We have studied the evidence carefully, and, while we feel that the amount awarded may have been to some extent excessive, yet the fixing of the amount was within the province of the jury, and, there being evidence to support their finding on that question, it cannot be disturbed.

HIGGINS, J., was disqualified and did not sit in this case.

The judgment is affirmed.