DALE TRUCK LINE, Inc., Appellant,

v.

R. & M. WELL SERVICING and DRILLING
COMPANY, Appellee.

No. 12924.

Court of Civil Appeals of Texas.

Galveston.

Jan. 19, 1956.

Rehearing Denied Feb. 9, 1956.

Vinson, Elkins, Weems & Searls, B. Jeff Crane, Jr., and Sam W. Davis, Jr., Houston, for appellant.

Wm. N. Bonner, Houston, for appellee.

GANNON, Justice.

The parties will be referred to as in the trial court. This is an appeal by defendant, Dale Truck Line, Inc., from a money judgment against it in favor of plaintiff, R. & M. Well Servicing and Drilling Company, for general and special damages resulting from the negligent destruction in course of transportation by truck of an engine or power unit, part of the equipment constituting a drilling rig.

Defendant is a contract trucking concern engaged in the transportation for others of property, including oil well drilling rigs. Plaintiff is engaged in the business of contracting to drill oil wells. In carrying out its contracts it is necessary that plaintiff arrange for its drilling equipment to be hauled from one well location to another. Prior to the events giving rise to this suit defendant Truck Line had done considerable hauling of drilling rigs and equipment for plaintiff between various well locations and was apprised of the general nature of the business in which plaintiff was engaged.

On July 29, 1954, plaintiff had completed the drilling of a well for the Union Producing Company on its Whitehead lease near Fairbanks, northwest of Houston in Harris County, Texas. Plaintiff had previously contracted with Humble Oil & Refining Company to drill a well for it at a Barbour's Hill location some distance removed from Fairbanks and to use in the drilling of the well at the Barbour's Hill location the equipment with which it had drilled the Fairbanks location for Union Producing Company. Plaintiff arranged with defendant for the hauling of this drilling rig and equipment from the Fairbanks location to the Barbour's Hill location. It was a part of the understanding that the shipment was to be delivered by defendant to the Barbour's Hill location not later than 8:00 A.M. on the morning of July 30, 1954. In the course of transportation a certain L. R. O. U. Waukesha engine and power unit, an integral part of plaintiff's drilling rig, was negligently damaged when the truck upon which it was loaded failed to clear a railroad overpass. All the rig and equipment were timely delivered except the Waukesha power unit which, after the damage to it, was supposed to have only junk value. However, it was later disposed of for $3,000. This amount, plus the contract price of the hauling, $3,030.38, or a total of $6,030.38, was tendered by plaintiff and allowed by the court as an offset against the gross general and special damages sued for by plaintiff and found in its favor by the court in the total sum of $14,030.38. Judgment was accordingly rendered in favor of plaintiff and against defendant for

$8,000, but with interest only from date of judgment.

In arriving at the allowance of damages the court found there was no market value for the power unit involved, but concluded it had an intrinsic value as of the date of the damage of $13,081.21. The additional allowance of $949.17 represents special damages found by the court to have been suffered by plaintiff during a delay of several days before the Waukesha engine and power unit could be replaced and delivered to the Barbour's Hill well location. The drilling rig was inoperable without the power unit.

Defendant attacks the judgment on several grounds. It is first complained there was no legal basis for the allowance of special damages because there was no proof of notice when the contract was made that special damages would ensue as a natural and probable result of the delay by reason of damage to the power unit during the time necessary to replace it at the well location. We overrule the point.

■ It is settled as contended by defendant that special damages are not recoverable for breach of contract in the absence of a showing that defendant had notice of special conditions or circumstances rendering such damages probable as a result of the breach; however, it does not seem to be the law that the giving of express notice is required. Such notice may be implied from circumstances and a course of dealing between the parties whereby defendant becomes familiar with facts which would indicate that the contract was based upon or made with reference to conditions which rendered such special damages the natural and probable result of a breach.

It is established in the evidence that defendant was familiar with the fact that plaintiff was an oil well drilling contractor. Here there can be little doubt that defendant realized when it made the contract to deliver the drilling rig in question from one drilling location to another and on a day and at an hour certain that it could anticipate that special damage of some kind would result from delay in being able to put the drilling rig to use. It is not necessary that a defendant charged with liability for special damages should have detailed information with respect to the exact and precise damages which may be incurred. It is only necessary that he have notice of facts and circumstances rendering it reasonably probable that delay will result in some damage such as here from loss of use of the drilling rig in question, including, of course, expenses which may be incurred in paying of drilling crews required to stand by pending repairs or replacements of integral parts of the rig.

Though there is no proof of express notice, we are of the opinion that the facts and circumstances surrounding the parties clearly implied notice to defendant of the likelihood of special damage from delay.

We quote from the annotation at 166 A. L.R. 1034: "Generally it may be said that the requirement that, in order to recover special damages, the defendant must have had notice or knowledge of the special conditions or circumstances rendering such damages the natural and probable result of his breach of contract, is given a reasonable interpretation with reference to the subject to which such notice is applied. As applied in a case where recovery of special damages against a carrier for delay in the transportation or delivery of goods is sought it must appear that notice of the special facts or circumstances giving rise to the claim therefor were brought home to the carrier, usually at the time the contract was made * * *, in such way that the carrier must have known that the person with whom it contracted reasonably believed that it accepted the contract of carriage with knowledge of the contemplated use of the property and that delay in transportation or delivery might result in suffering of special damages." In another part of the annotation it is stated that the nature of a shipment consisting of machinery has been held not necessarily to put the carrier on notice that special damages will ensue from delay. But the annotation proceeds, "However, the carrier's knowl-

edge of the nature of the shipment as machinery, machine parts, or tools, coupled with its knowledge of other facts or circumstances indicating necessity of prompt delivery, may be sufficient. The shipment of flues in an uncovered package to a tobacco grower was held, in Thompson v. American Ry. Express Co., 1920, 180 N.C. 42, 103 S.E. 898, to put the carrier on notice that special damages would probably result to the consignee's tobacco if the flues were not delivered promptly where flues of this kind were used only for carrying tobacco, the shipment was made during the tobacco-curing season, failure to cure tobacco at the proper time would result in material loss, and all these facts were common knowledge in the area where the shipment was made.

"And in an action to recover special damages caused by a carrier's delay in transportation and delivery of a sawmill edger, the court, in Story Lumber Co. v. Southern R. Co., 1909, 151 N.C. 23, 65 S.E. 460, held that there was sufficient evidence to carry the case to the jury, and that the evidence was of such character that the jury could fairly presume knowledge by the carrier that there was a special purpose or present use for the machine, and that a failure by the carrier to perform its contract would result in more than nominal damages to the plaintiff, where the evidence showed (1) the name of the plaintiff, indicating the character of business engaged in by it; (2) the nature of the article shipped, to wit, an edger, a machine used by sawmills, weighing about 1,000 pounds, indicating an article not of general use but for a particular purpose; (3) the fact that the machine was shipped unboxed, uncovered, and open, and thus was observable by the defendant; (4) the fact that it was a single machine, indicating that it was intended to be used in conjunction with other machinery; and (5) the destination, which was a section in which lumber was manufactured.

"Where plaintiffs delivered two boxes of carpenters' tools to a carrier's agent at a government camp, telling the agent they wanted them shipped to a certain place, where there were other camps, it was held, in Pendergraph v. American Ry. Express Co., 1919, 178 N.C. 344, 100 S.E. 525, that the carrier had all the notice it could have had if it had examined the tools in the boxes, and that by the exercise of ordinary care it would have known for what purpose the tools were to be used, and therefore that it was responsible for any loss proximately caused by its negligence and delay, including loss of time. The opinion in this case does not state whether or not the shippers informed the carrier's agent as to the contents of the boxes.

"The character of the shipment—a 650-pound shaft—taken in connection with the title of the consignee (a furniture-manufacturing company), and the fact that the shaft was being shipped by express, was held in Harper Furniture Co. v. Southern Express Co., 1908, 148 N.C. 87, 62 S.E. 145 [148], 30 L.R.A.,N.S., 483, 128 Am.St. Rep. 588, supra, V, to give the express company notice that special damages would probably be caused by a delay in transportation and delivery of the shaft. The court said: 'In this day and time, certainly it is a matter of common knowledge that an engine shaft is the part by which the power of the engine is applied to the operating machinery. That it is essential and necessary for the purpose, and without it the engine itself and the machinery dependent upon it are for the time out of action. The kind and size, and weight of the shaft, would give notice of at least the maximum capacity of the engine.' "

■ We are satisfied that the record well supports the trial court's finding that defendant had notice at the time the contract of transportation was entered into sufficient to charge it with liability for special damages resulting from delay. In this oil country it is unrealistic to say that a contract hauler agreeing with a concern which it knows to be in the oil well drilling contracting business to deliver a drilling rig from one well location to another and undertaking to complete the transportation by not later than a definite hour of a day cer-

tain is not upon notice of the use to which it is intended to put such drilling rig and that it could not reasonably anticipate as a natural and probable consequence of delay that special damages would ensue.

■ ■ Defendant also complains that there is no proof in the record to support the amount of the special damages found by the trial court to have been suffered by plaintiff. We sustain this point.

The proof does show that the plaintiff had a contract with Humble Oil & Refining Company to drill a well at the Barbour's Hill location and that while its drilling rig was being used at that location certain day rates were to be paid and that these varied in relation to the presence at the well site of power for the operation of the rig. However, the record is utterly devoid of proof of the cost to plaintiff for labor and materials and supplies in earning the various day rates provided in the contract. In short, while the gross amounts which plaintiff would have received under the contract had the power unit been on location during the delay is shown as well as the lesser amount which it actually received pending delivery of the power unit to the well location, there is no proof of the additional cost to plaintiff of earning the higher figures on account of necessary expenditures for fuel, additional drilling crews, wear and tear on its equipment, etc. In short, while the record is sufficient to show that plaintiff has been deprived of certain gross receipts, there is nothing to show the net profit, if any, which it has lost. Plaintiff attempts to supply this gap in the proof by certain statements and assumptions set out in its brief, but these are without support in the statement of facts and, of course, we cannot consider them.

The want of proof of the amount of net profits, if any, which plaintiff has lost by reason of the delay in question likens the case to American Railway Express Co. v. Parisian Hat Co., Tex.Civ.App.1922, 240 S.W. 947, 949. That was a suit to recover special damages for delay in a shipment of seasonable merchandise, viz., ladies' hats, which had been shipped to be disposed of at retail. The trial court allowed a recovery for the full retail price of the hats without proof of or deduction for the expense to which the plaintiff would have been put in disposing of the hats at retail. The judgment for plaintiff was reversed. The court said, "Under the facts, it may be conceded that, with reference to the merchandise contained in said shipment, appellee occupied the position of a retail merchant and, under proper allegation and proof, would have been entitled to recover as special damages the amount it would have earned over and above the wholesale price of said merchandise less the expense which necessarily would have been incurred in disposing of same at retail. In so far as it was sought to recover special damages on account of the loss of profits, appellee should have alleged the grounds giving rise to such rights and supported same by proper proof. This, appellee failed to do. Foster v. International & Great Northern Ry. Co., Tex.Civ.App., 175 S.W. 762; Midkiff v. Benson, Tex.Civ.App., 225 S.W. 186."

In connection with this point of error, it is to be observed that plaintiff has been unable to suggest any theory under the proof on which the amount of the special damages was arrived at.

■ ■ Defendant next complains that it was error for the court to base its award of general damage on the intrinsic value of the power unit involved, claiming in this connection that the proof showed that there was a market value for the power unit. We have reviewed the evidence and doubt there is any evidence which would have supported a finding that there was a market value for the engine involved. Be that as it may, there was other proof directly on the proposition that there was no market or market value for the destroyed engine and we are not at liberty to disturb the trial court's finding of lack of market value. However, the additional complaint that the amount determined by the trial court, to-wit: $13,081.21, as the intrinsic value of the power unit involved, at the time of its

destruction, is without support in the evidence, is thought by us to be well taken.

■ It was established that the original cost of the power unit and equipment was $13,389.66. There is some proof that as of the date of the damage this original cost had increased by 10%, which would produce a replacement new figure of $14,728.-62. However, the proof is undisputed and comes from plaintiff, that the engine as of date of the damage had depreciated in value by 15% to 20%. Applying the lower 15% figure to replacement cost of $14,728.62 produces a depreciated value of $12,519.13, which is lower by some $461.88 than the intrinsic value found by the court. In the light of the proof we do not think this higher figure for intrinsic value can stand. We think the finding results from a regrettable confusion in the evidence with respect to the original cost of the power unit, which at one point was testified to as $14,294.80. However, this figure was later shown beyond question to be the original cost not of the power unit but of a certain pump unit. In its brief plaintiff states, referring to the Waukesha power unit, "It cost $16,-891.21 and there had been at least one increase in the price of it of 10% since it was bought." There is no reference to the statement of facts to support this claimed cost figure of $16,891.21 even though challenged by defendant and defendant supports its challenge with appropriate page references to the evidence to be found in the statement of facts. In connection with our discussion of these matters, we advert to the complaint of defendant that the court fixed intrinsic value on the basis of the value of the power unit to the plaintiff. We do not think the record supports this complaint. There was some testimony concerning the value of the power unit to the plaintiff but we do not construe this as anything more than illustrating the witness' testimony concerning the utility and desirability of the power unit in question from the standpoint of any oil well drilling contractor. In any event, the value of the power unit in question to plaintiff, or any other particular person, is immaterial and should not be considered in arriving at intrinsic value. This is to be determined in relation to definite standards such as replacement cost new, depreciation, obsolescence, if any, anticipated serviceable life, general usefulness of the item involved, etc.

From what we have said, it necessarily follows that the judgment of the trial court must be reversed and remanded for another trial.

By cross-assignment of error plaintiff complains of the refusal of the trial court to allow interest as damages from the date of the casualty to the date of judgment. The cross-assignment is sustained.

■ It is true that interest is not recoverable on every unliquidated demand. But where, as here, the amount of such demands is determinable as at a time certain and under fixed rules of evidence, it is allowed as damages as a matter of law. Watkins v. Junker, 1897, 90 Tex. 584, 40 S.W. 11; Ewing v. William L. Foley, Inc., 1926, 115 Tex. 222, 280 S.W. 499, 44 A.L.R. 627. The contrary conclusion announced by the Supreme Court in Keystone Pipe & Supply Co. v. Zweifel, 127 Tex. 392, 94 S.W.2d 412, no doubt accounts for the trial court's ruling, but in the very late case of Texas Company v. State, Tex.Sup.1955, 281 S.W.2d 83, the holding in the Keystone Pipe & Supply Co. case was ruled contrary to the well reasoned opinion in Watkins v. Junker, supra, and unauthoritative, and the Court refused to follow it.

■ All damages involved here are determinable as at a time certain and under definite standards of loss and by fixed rules of evidence. See 13 Tex.Jur., title "Damages," Sec. 146, page 263; Sec. 70, page 165, and Sec. 314, page 519.

Reversed and remanded.