CITY OF SHERMAN, Appellant,

v.

Chester M. GNADT et al., Appellees.

No. 15655.

Court of Civil Appeals of Texas.

Dallas.

May 27, 1960.

On Rehearing July 1, 1960.

Rehearing Denied July 8, 1960.

Joe P. Cox, Jr., City Atty., and Stephen Davidchik, Sherman, for appellant.

Slagle, Hughes & Kennedy, Sherman, for appellees.

DIXON, Chief Justice.

This litigation began on May 29, 1958 when appellee Chester M. Gnadt filed suit in a District Court against the City of Sherman, Texas for $16,958.63 for ordinary damages and $10,000 for exemplary damages alleged to have been caused by the City's refusal to issue to Gnadt a permit for the alteration and improvement of a tourist court, or motel owned by appellee on Highway No. 75 in the City of Sherman. Such was the beginning of the litigation, but before the case was tried, it took on an entirely different look.

In view of subsequent events we think it is appropriate briefly to state the substance of Gnadt's original petition. He alleged that on January 3, 1955 he bought the motel from E. A. Murrell, and shortly thereafter reconditioned, altered and improved the property. In March 1955 in an election called for that purpose bonds were voted by the City for the purchasing of a

right-of-way for a proposed expressway through the City. On February 6, 1956 the City passed an ordinance establishing the location of said proposed expressway, and prohibiting for a period of eighteen months, improvements, alterations, and repairs (except necessary maintenance repairs) of property lying within the limits of the described right-of-way. Part of appellee's motel lay within said limits.

Appellee further alleged that after passage of said ordinance the City was derelict in its duty in that for a period of twenty-eight months appellee had not been approached with an acceptable offer for the purchase by the City of his property, despite his efforts to cooperate with City officials. On February 13, 1957 appellee filed his application for a building and improvement permit, which permit was refused by the City with the notation "this property is in proposed expressway and is prohibited by ordinance". As a result of said refusal appellee lost the revenues of two units, to his damage in the sum of $3,908.63; he was not permitted to install television sets, to his damage in the sum of $5,785; he was deprived of the use and enjoyment of his property, to his damage in the sum of $5,000; and he was not permitted to make other improvements, to his damage in the sum of $2,265.

On September 24, 1958 the City filed its amended answer and cross-action. This pleading contained numerous exceptions to appellee Gnadt's petition. In its cross-action the City sued for condemnation of a portion of appellee's property for use as a part of the expressway heretofore mentioned. Under similar circumstances it has been held that the District Court had jurisdiction of cross-action for condemnation. City of Dallas v. Megginson et ux., Tex. Civ.App., 222 S.W.2d 349.

The City brought in two new parties as cross-defendants: Mrs. Antonia Gnadt, wife of Chester M. Gnadt, and E. A. Murrell, owner of vendor's lien notes against the property.

In answer to the City's cross-action appellee Gnadt, his wife, and E. A. Murrell, admitted (1) the City had a right to condemn appellees' property as described in the cross-action; (2) the legality of the procedure adopted by the City; (3) all formalities required by law had been followed; (4) the court had jurisdiction over the matters involved; and (5) the only issue remaining to be determined was the amount of money which should be paid to appellees for their loss and damage by reason of such condemnation and the taking of their property and business. Appellee Gnadt also pled for special damages in the amount of $15,000 for the cost, expense and actual damage which he would suffer by reason of being forced to close his motel and move from the premises.

On January 12, 1959 the court sustained the City's exceptions, thus eliminating Gnadt's entire cause of action as set out in his original petition.

Upon trial a jury found the market value of the land to be taken considered as severed land to be $27,000; the market value of the property, exclusive of the strip of land condemned, immediately before the taking to be $40,500; and the market value of the remainder immediately after the taking to be $5,000. On March 28, 1959 judgment was rendered in favor of appellees, the Gnadts and E. A. Murrell for $62,500.

### Facts.

The testimony shows that the motel is in an area zoned for commercial uses. It consists of sixteen frame buildings containing eighteen rental units. The largest building, at the front of the property, contains the motel offices, and back of the offices the living quarters of the Gnadts. Six of the buildings, including the office and living quarters, were taken by the condemnation, but others were left too close to the highway to be suitable for motel purposes.

Gnadt testified that he bought the motel in January 1955 from E. A. Murrell for a consideration of $57,500 plus a fee of

$1,000 to his, Gnadt's real estate agent. In connection with his purchase he paid $11,000 cash, and executed vendor's lien notes for the balance of the purchase price, on which notes there was a balance due Murrell at the time of trial of slightly less than $34,000. Since purchasing the property Gnadt had spent $6,300 for repairs and improvements.

After construction of the expressway, Gnadt's property will not abut the main part of Highway No. 75 as it did before the taking. It will abut a dead end access road. Motorists on the highway traveling north will have to pass beyond the motel and double back along the access road to get to the motel. Motorists traveling south will have to make a left turn across the highway to the access road to get to the motel.

As to the effect of the dead end access road we quote the testimony of Gnadt:

"A. It ruins it for tourist court or any other operation, retail operation that would depend on the business from the highway, from the main highway. Q. And the northbound traffic in no way could get over to you there at all, could they? A. Not in the vicinity of our court. It would have to go clear beyond the Katy railroad up to some point where they could turn around, come back south and pass us and then circle back to the right and eventually would find us if they didn't get lost."

Testimony as to market value shows these variations in opinion:

(a) Whole property, from $75,000 to $48,000.

(b) Part taken, from $40,000 to $17,380.

(c) Remainder before taking, from $40,000 to $29,255.

(d) Remainder after taking, from $13,300 to $2,250.

The evidence, including the testimony of appellant's two valuation witnesses, is undisputed that the remainder after the taking will not be adaptable for use as a motel. As one witness put it referring to the effect of the taking on the remainder, "I think it would entirely kill the spot for a location for a motel."

One witness thought the remainder after the taking might be adaptable for use as the site for a warehouse. Others thought it might be adaptable for use as a doctor's, or lawyer's, or a real estate agent's office; or a flower shop; or an eating place; or a washateria. None of the witnesses testified to facts adequately supporting their opinions as to the adaptability of the property and the reasonable probability of its future use for other purposes than its present use.

Gnadt testified that in 1955 his gross income from the motel was $19,272 and the net income was $9,985; in 1956 the gross income was $15,640.50, the net income, $8,738; in 1957 the gross income was $12,684, the net income $4,556; and in 1958 the gross income was $10,762.25.

Gnadt also testified that the motel was in operation twenty-four hours each day, and that either he or his wife was present and in charge at all times. The net income figures above shown apparently did not take into account any allowance for depreciation of the property, or any charge for the work and management services of Gnadt and his wife.

Gnadt admitted that the large gross income in 1955 was due in part to an oil boom in Grayson County that year. But the steady decline in gross income in recent years he attributed to his inability to make improvements because of the City's refusal to grant him a permit for that purpose. He testified that he was denied permission to install television sets, kitchenettes and to make other improvements with the result that he could not keep pace with competitors and business left him to go to his competitors.

Opinion.

In its first six points on appeal appellant complains of the alleged erroneous

admission of testimony over its objection, which testimony appellant says was prejudicial and calculated to cause the jury to return an excessive verdict.

More specifically appellant asserts in its first six points that on direct examination appellee Chester M. Gnadt was permitted to testify that (1) he was prohibited by City Ordinance from making improvements to his property, and that this prohibition caused him to fail to meet competition in the motel field in Sherman, Texas; and (2) he suffered a decline in revenue due to his being prohibited by City Ordinance from adding television sets to his property. Appellant says that it was error to admit the above testimony because such testimony was (a) the subject of special exceptions which had been sustained prior to trial; (b) too remote and speculative and not consistent with facts as they existed at the time of the taking; and (c) concerned damage suffered by the community as a whole.

The conclusion of appellant's argument in its brief under its first eight points, including the six points here involved, is as follows:

"It is respectfully submitted that the admission of testimony relating to an existing City Ordinance and the exercise of the police power of a political municipality, as hereinabove complained of caused the jury to be mislead, confused, and to place improper valuation on the property sought to be condemned, and so prejudiced the appellant herein that it cause the rendition of an improper, and excessive verdict. * * *".

■ Appellees strenuously object to our consideration of the first six of appellant's points on appeal. In each of these points appellant alleges that Gnadt was permitted to testify that he was prohibited by City Ordinance from doing certain things. Appellees say that in said points appellant incorrectly states the facts and the record; that upon examination of the portion of the record pointed out by appellant it will be found that Gnadt did not make any reference to the City Ordinance.

Appellant's statement in its brief under these points contains a copy in full of the City Ordinance passed February 6, 1956. The testimony of Gnadt which is the subject of attack is not quoted in appellant's brief, but our attention is directed to three different places in the statement of facts where, according to appellant, the objectionable evidence may be found. We have studied the record at the places to which appellant has directed our attention. The record does not support appellant's contention. In none of the three places to which we are referred does Gnadt's testimony make mention of the City Ordinance. Under the circumstances we are not required to consider appellant's first six points on appeal. Burke v. Burke, Tex.Civ.App., 309 S.W.2d 247, 250; Dale Truck Line, Inc., v. R & M Well Servicing & Drilling Co., Tex.Civ.App., 286 S.W.2d 446, 450; Saldana v. Garcia et vir, 155 Tex. 242, 285 S.W.2d 197.

Nevertheless we have studied the whole record in connection with appellant's first six points and have concluded that the points should be overruled for reasons hereinafter stated.

■ Gnadt was permitted to testify *without objection* as follows:

"Q. In the last two years particularly you have had a decline in your overall gross revenue from room rents, and to what do you attribute that, please sir? A. Well, it's attributed almost entirely to the fact that I have been prohibited by City Ordinance from making improvements that I needed to make in order to keep up with my competitors in the motel field here in Sherman. And through, by economic reasons there are certain improvements in equipment that I would have added if I had not known that, or been assured that they were going to take our business away from us.

"Q. Since July of 1956 you have been on notice that you, on most any kind of notice you were liable to be out of business. Is that correct? A. Yes. That is true, and to add additional equipment,—I'm speaking now about the economic part of it, I wanted to add televisions to most of our rooms. We need them in about seventy-five percent of our rooms. As I stated, I only have three sets. Two of them were not purchased until November of 1957, and the third one was not purchased until about three or four months ago, in the latter part of 1958.

"Q. Have you refrained from purchasing additional television sets because you did not know how long you would be operating the business? A. Yes sir. That's true. That would cost in the neighborhood of $3,000.00 to buy as many television sets as I had need for, and at no time have I been assured that I would be operating for more than six months."

Without passing on the question whether testimony was admissible in connection with the income approach to market value, we point out that no objection was made to its reception, and no motion was made asking the court to instruct the jury to disregard the testimony. Further we must point out that appellant vigorously and at length cross-examined Gnadt as to the improvements which Gnadt says he was not permitted to make. Under the circumstances we must hold that the admission of the testimony does not constitute reversible error. Poole et al. v. State Highway Department et al., Tex.Civ.App., 256 S.W.2d 168; Hooper v. Courtney, Tex.Civ.App., 256 S.W.2d 462; Traders & General Ins. Co. v. Stone, Tex.Civ.App., 258 S.W.2d 409; 3-B Tex.Jur. 294, 664. Appellant's first six points on appeal are overruled.

■ In its seventh and eighth points the City again complains of the erroneous admission of certain testimony which was prejudicial and calculated to cause the jury to return an excessive verdict. More specifically the City says that the court erred in admitting the testimony of Gnadt on redirect examination to the effect that (7) the lack of kitchenettes and television sets caused diminution of income from the property, and that lack of same was due to the refusal of the City to grant a permit; and (8) the lack of kitchenettes made the subject property lose business and caused Gnadt to refer many persons to other motels with kitchenettes. Appellant alleges that this testimony was inadmissible because (a) it was the subject of pleadings to which special exceptions were sustained prior to the trial; and (b) it was immaterial to the issue of fair market value.

Appellant in its brief grouped its seventh and eighth points with its first six points in its statement, argument and citation of authorities.

The record shows that appellant itself on cross-examination of Gnadt brought out the testimony in regard to the lack of kitchenettes. We quote from Gnadt's testimony:

"Q. Now the, the economic pressure of the improvements at Nowlins and the other motels has actually contributed to, as much to your loss of revenue as this idea that the highway is going to come through there, hasn't it? A. The idea of the highway coming through, so far as I know, hasn't affected any of our customers. We haven't lost any of our regular customers just because they think we're going out of business.

"Q. And you— A. It's the improvements in other motels that have attracted some away from us. Not only our old customers, but new ones that we might hope to obtain.

"Q. In other words, they left because the other boys were making improvements and you were not? A. We lost a lot of business on account of

television sets and another great loss was on account of not being able to furnish kitchenettes."

Appellant did not object to the above testimony, or move that the jury be instructed to disregard it. In view of Gnadt's testimony without objection on direct examination about improvements (which we have quoted) and further in view of the testimony about kitchenettes brought out on cross-examination by the City, we do not believe it was reversible error for Gnadt to testify on redirect examination of the City's refusal to permit him to install kitchenettes. Appellant's seventh and eighth points are overruled.

In its ninth to twelfth points inclusive appellant again complains of the alleged erroneous admission of testimony which was prejudicial and calculated to cause the jury to return an excessive verdict. According to appellant Gnadt was permitted to testify about delay between the time of negotiations between himself and the City and the time actual condemnation proceedings commenced.

■ We have again read the testimony as it appears in the statement of facts at the places to which appellant in its brief directs our attention. We do not find any such testimony as that about which appellant complains. Consequently we cannot sustain these points. Saldana v. Garcia et vir, 155 Tex. 242, 285 S.W.2d 197; Burke, v. Burke, Tex.Civ.App., 309 S.W.2d 247, 250. Appellant's ninth to twelfth points inclusive are overruled.

In its thirteenth to seventeenth points inclusive appellant again complains of the alleged erroneous admission of testimony which was prejudicial and calculated to cause the jury to return an excessive verdict.

■ More specifically, appellant says that in admitting testimony in regard to the value of the remaining portion of appellees' property after the taking, the court erred in allowing five witnesses in behalf of appellees to testify about the change in flow of traffic due to the building of a dead end access road in front of the said remaining portion, with the resultant loss in business.

■ Accessibility is a factor which may be taken into consideration in determining the market value of remaining property after a taking under eminent domain. The State of Texas v. Meyers et al., Tex.Civ. App., 292 S.W.2d 933, 938; Brazos River Conservation & Reclamation District v. Costello et al., Tex.Civ.App., 169 S.W.2d 977, 987. Consequently we think it was proper to admit testimony showing that the value of the remaining after the taking was affected by the fact that the remainder was left fronting on a dead end access road. As we pointed out earlier in this opinion, the witnesses, even appellant's witnesses, testified without objection that the effect of the taking was to destroy the adaptability of the remainder for use as a motel site. The testimony of which appellant complains was not so much about a change in flow of traffic as it was an impairment of accessibility.

In the landmark case of State v. Carpenter et al., 126 Tex. 604, 89 S.W.2d 194, at page 200, 979 the Court says: "Generally, it may be said that it is proper as touching the matter of value and depreciation in value to admit evidence upon all such matters as suitability and adaptability, surroundings, *conditions before and after,* and all circumstances which tend to increase or diminish the present market value." (Emphasis ours.) Appellant's thirteenth to seventeenth points inclusive are overruled.

■ In its eighteenth point on appeal appellant says the court erred in sustaining appellees' objection and refusing to allow Gnadt on cross-examination to answer the question of what would be a proper rendition for the subject property assuming it is valued for tax purposes at 36% of its cash market value. It is appellant's contention that this testimony was admissible for impeachment purposes.

Gnadt on cross-examination testified that in 1957 and 1958 he voluntarily rendered the property to the City for tax purposes at $10,000.00 valuation, and to the School District at $11,000.00.

■ We agree that evidence of the value placed voluntarily upon property by an owner for tax purposes is admissible to show that the property is of less value than that claimed by the owner in his testimony during a condemnation hearing. But the rule is not applicable in this instance for these reasons: (1) The testimony was sought in answer to a hypothetical question, and there is no evidence in the record to support the assumption that property in Sherman, Texas, is valued for tax purposes at 36% of its market value; (2) The question calls for a mere exercise in arithmetic which the jury was as well able to do as the witness; (for example: if 36% of market value is $11,000, what is 100% of market value?); (3) The question as phrased called for the witness to say what a *"proper* tax rendition, tax value" would have been, so called for a legal conclusion; and (4) No bill of exception appears in the record to show what the witness would have answered. Appellant's eighteenth point is overruled.

■ In its nineteenth, twentieth and twenty-first points appellant says that the court erred in overruling the City's exception to certain pleadings, and in failing to instruct appellees not to read said pleading to the jury.

Gnadt's answer to appellant's cross-action contained this allegation:

"That said amount proposed to be paid by cross-plaintiff, the City of Sherman, to cross-defendant does not compensate this cross-defendant, or, alternatively, does not adequately compensate this cross-defendant for the cost and expense and the actual damage which he will suffer by reason of being forced to close and move from the aforesaid premises a going business now earning him a sum in excess of Fifteen Thousand And No/100 ($15,000.00) Dollars annually."

Appellant levelled a special exception at said pleading. We do not find in the transcript of the record a copy of any order overruling the said exception. However appellant and appellees in their briefs treat the exception as having been presented and overruled, so we shall do the same.

Appellant argues that it was error to overrule its exception because the pleading does not allege a proper element of market value of property taken, or damage to the remainder in a condemnation. In support of its contention appellant cites us to State of Texas v. Villarreal, Tex. Civ.App., 319 S.W.2d 408; Marshall v. City of Amarillo, Tex.Civ.App., 302 S.W.2d 943; State of Texas et al. v. Parkey, Tex. Civ.App., 295 S.W.2d 457; and Herndon v. Housing Authority of City of Dallas, Tex.Civ.App., 261 S.W.2d 221.

The first three of the above cited cases are not in point since (1) they involve a whole taking rather than a partial taking of property; and (2) they involve questions relating to the admission of testimony, rather than the mere reading of a portion of a pleading to a jury. The fourth of the cited cases, the Herndon case, supra, seems to us to be more authority against than for appellant's contention. As will be seen from a reading of a portion of the opinion on page 223 of the Reporter this Court took notice of the difference in the rules applicable in a whole taking and in a partial taking.

■ It has been held that in a partial taking, resulting injury to a business may be considered not as a separate item of damage, but as affecting market value of the remaining land and improvements for uses to which they were adapted and were being put. State v. Meyers et al., Tex.Civ. App., 292 S.W.2d 933; City of Dallas v. Priolo et ux., 150 Tex. 423, 242 S.W.2d 176, 179; Milam County v. Akers, Tex.Civ.App., 181 S.W.2d 719; and State v. Blair et al.,

Tex.Civ.App., 72 S.W.2d 927, 929; 65 A.L. R. 455.

■ It has also been held that in determining market value a jury may take account of the fact that the removal of structures is necessitated in a partial condemnation. City of Denton v. Chastain et ux., Tex.Civ.App., 156 S.W.2d 554; State v. Blair, Tex.Civ.App., 72 S.W.2d 927, 929; State v. Lowrie et ux., Tex.Civ.App., 56 S.W.2d 676, 678; Pillot et al. v. City of Houston, Tex.Civ.App., 51 S.W.2d 794, 797; 16 Tex.Jur. 529.

On other grounds we are convinced that it was not reversible error to overrule appellant's exception. (1) The testimony was undisputed that the remainder after taking was not suitable for motel purposes. There was testimony received without objection as to the salvage value of the cottages remaining. This would include the cost of removing them. There was also testimony received without objection pertaining to the income produced by the motel and its effect on market value. Some of this testimony came from one of appellant's witnesses. Under the circumstances the error in overruling appellant's exception, if it was error, must be considered harmless. Brandtjen & Kluge, Inc., v. Hughes, Tex.Civ.App., 236 S.W.2d 180 (Syl. 4); Rule 434, Texas Rules of Civil Procedure.

This view is further strengthened by the fact that the court instructed the jury that in arriving at its decision as to market value, it was not to consider the value of any movable personal property, or the loss of future profits, or the cost of moving the business. Pittman v. Baladez, Tex.Civ. App., 304 S.W.2d 601, 606 (Syl. 5), reversed on other grounds Tex., 312 S.W.2d 210.

Appellant's nineteenth, twentieth and twenty-first points are overruled.

The judgment of the trial court is affirmed.

CRAMER, J., not sitting.

On Rehearing

DIXON, Chief Justice.

As indicated in our main opinion the record in this case contains testimony in support of these valuations: part taken, $40,000; remainder before taking, $40,000; and remainder after taking, $2,250. Based on such testimony and figures the jury could have made findings which would have supported a judgment in excess of the $62,-500 awarded in this case.

■ But in one particular we must hold that the finding of the jury was excessive because it went beyond the maximum value for which there is support in the evidence. The jury in answering special issue No. 2 found that the value of appellees' land, exclusive of the strip of land condemned, immediately before the strip was taken, was $40,500. The highest valuation we find in the testimony as to the value of appellees' land, exclusive of the strip of land condemned, immediately before the strip was taken is $40,000, which was the valuation testified to by the witness Joe P. Treece. The jury's finding in this particular was $500 in excess of the highest valuation which finds support in the evidence.

In our opinion the judgment of the trial court is excessive in the amount of $500 as above indicated, and should be reversed for that reason only. However if appellee or his attorneys will file a remittitur of $500 within ten days from this date we shall reform the court's judgment accordingly and affirm the judgment as reformed. Rule 440, T.R.C.P. If such remittitur is not filed the judgment will be reversed and remanded for another trial.

CRAMER, J., not sitting.

On Remittitur.

Appellee has filed a remittitur in the sum of $500. Therefore the judgment of

the trial court will be reduced from $62,-500 to $62,000. The judgment as so reformed is affirmed.

Appellant's motion for rehearing is overruled.

CRAMER, J., not sitting.