BIDDLE, Respondent, v. HUSSMAN, *et al.*, Appellants.

1. A. having leased a lot to B. for a term of years, joined with others, the owners of adjoining lots, in a deed of conveyance by which a portion of the lot leased was conveyed to the city of St. Louis; this deed contained the following clause: "It being understood that some of said first parties have made leases for portions of the wharf property hereby conveyed, the terms of which have not expired; and the conveyance to the city is made by said first parties subject to said leases now in existence;" the portion thus conveyed by A. to the city of St. Louis was duly condemned and appropriated to public uses. *Held,* in a suit brought by A. against B. to recover the whole of the rent reserved, that the conveyance to the city carried with it, as incident to the part of the reservation conveyed, a proportionate part of the rent, the above clause not amounting to a reservation of the rent to the grantor.

2. The condemnation and appropriation to public uses of a portion of a lot leased for a term of years, will extinguish a proportionate part of the rent, and entitle the parties—landlord and tenant—to compensation according to their respective rights.

3. In determining the proportionate part of the rent due to the landlord for the portion not appropriated to public uses, the jury must have reference, in making their estimate, to the *real value* to the tenant of what is left uncondemned, and not merely to the quantity.

*Appeal from St. Louis Land Court.*

This was an action to recover rent alleged to be due plaintiff. Under instructions given by the court, which it is unnecessary to set forth, a verdict was rendered for plaintiff for the whole rent reserved. The opinion of the court sufficiently sets forth the facts.

*I. T. Wise,* for appellants, cited 1 Co. on Litt. 143, *a* 151, 448, 482; 8 Cowen, 206: 18 Gilb. on Rents, p. 30, 59; 8 Cowen, 209, 728; 2 Co. Inst. 412; Cruise Dig. T. 17, § 19; 4 Kent's Com. 356; 3 id. 470; 2 East. 575; Taylor's Land. & Ten. 183, 219; Jackson v. Eddy, 12 Mo. 209; 3 Camp. 513; 25 Wend. 445; 1 Ld. Raym. 77; Waters' case, 3 Coke, 22; 11 Ala. 63; Const. of Mo. art. 3 sec. 7; Sess. Acts, 1853, p. 248; 15 Wend. 464; 11 Ohio, 408; 24 Wend. 254; 11 Platt on Leases, 151.

*I. H. Keim*, for respondent, cited 1 Hilliard on Real Property, 225, 257 ; Fowler v. Botts, 6 Mass. 63 ; Parks v. City of Boston, 15 Pick. 198 ; 24 Wend. 254 ; Foote v. City of Cincinnati, 11 Ohio, 408 ; Fotts v. Huntley, 7 Wend. 210 ; Ellis v. Welch, 6 Mass. 246 ; Frost v. Earnest, 4 Whart. 86.

LEONARD, Judge, delivered the opinion of the court.

Biddle's conveyance to the city embracing part of the lot that he had previously leased to Hussman, the first question is as to the effect of that conveyance upon the rent reserved on the prior lease. Littleton (sec. 228) says, " that, by a grant of a reversion, the rent passes ;" and Coke, in his commentary upon it, tells us " the reason thereof is, because the rent is incident to the reversion, and passes by the grant of the reversion, as with the superior, without saying *cum pertinentiis*." Gilbert, in his book on Rents, (p. 174,) speaking in reference to the question whether a rent service incident to the reversion may be apportioned by the grant of part of the reversion, says : " It seems formerly to have been doubted whether, upon such a grant, there could be any apportionment, or whether the whole rent should not be extinguished and lost ; for, since the reversion and rent incident thereto were entire in their creation, they thought it hard that, by the act of the lessor, they should be divided, and thereby the tenant made liable to several actions and distresses therefor. But the conception was too narrow and absurd to govern men's property long ; for, if I make a lease of three acres, reserving three shillings rent, as I may dispose of the whole reversion, so may I also of any part of it, since it is a thing in its nature severable, and the rent, as incident to the reversion, may be divided too, because that, being made in retribution for the land, ought, from the nature of it, to be paid to those who are to have the land on the expiration of the lease. And hence it is that the rent passes immediately with the reversion, without any mention of it in the grant." The effect, therefore, of Biddle's conveyance to the city was to

transfer to the latter a proportionable part of the rent, unless the particular clause in the deed to which we have been referred had the effect of severing the rent from the reversion and reserving it to the grantor. The words of the clause are: "It being understood that some of the said first parties have made leases for portions of the wharf property hereby conveyed, the terms of which have not expired, this conveyance to the city is made by the said first parties, subject to said leases now in existence." These are not apt words of exception, reserving from the operation of the grant something that otherwise would have passed, and they do not import in their ordinary signification that the grantor thereby holds back and excepts from his grant something that the grantee would otherwise have taken under it. They refer to the condition of the grantor in reference to the land he is disposing of, and then declare that the grantee takes it subject to existing leases. That was all that the party could lawfully transfer, and, no matter what was the form of the deed, it could be effectual only to that extent. If no notice had been taken of the lease, the deed might have been considered *in form* a conveyance of the fee in possession, although it would have been *in effect* only a conveyance of the reversion; and the purpose of this clause, we think, was to make the *deed in form* what it was *in effect;* in a word, the declaration, that the property is subject to an existing lease, and that the grantee takes it with that burden upon it, expresses only—what otherwise would not have been *apparent*—that the transaction is a transfer of the grantor's reversionary interest in the property only, and not of an estate in possession. The effect of the deed, therefore, was to divest Biddle of a proportionate part of the rent. The original court, however, taking a different view of the law, instructed the jury that Biddle was entitled to the whole rent reserved, and for that reason the judgment must be reversed and another trial had. The question will then come up as to the effect of the subsequent condemnation of the lot upon the respective rights of the landlord and tenant. The interests of both these parties in the lot were

equally within the protection of our constitution. Both were owners within the meaning of the statute authorizing the condemnation, so that the interest of neither could be taken without a just compensation. If the rights of the parties had remained as they were originally before the making of the deed to the city, and the *whole* of the leased premises had been applied to the public use, we think the condemnation would have divested all rights of private property in the lot, and have thus extinguished the whole rent issuing out of it. The condemnation was a reassumption by the state of her original title to the land under her right of eminent domain. It was a revocation of the landlord's title, and may well be considered as extinguishing all rights depending upon the continuance of that title. This revocation was effected by law without the fault of either party, and could only be upon a just compensation to both parties, according to their respective rights in the property. The landlord was entitled to the present value of his reversion, and of the rents that were to become due to him during the continuance of the term, and the tenant to the present value of his leasehold interest over and above the rents payable during the term. The public, upon the resumption of the land, must pay the present value of the property, which is to be distributed between the landlord and tenant according to their respective interests. (Ellis v. Welch, 6 Mass. 250.) In the present case, however, only *part* of the lot was taken, and the effect of this partial application, we think, was to apportion the rent, extinguishing it in respect to the part taken, and leaving it subsisting as to the residue. This was so held in the case of Cuthbert v. Kuhn, (3 Whart. 357,) although a different view of the matter seems to have prevailed in Parks v. Boston (15 Pick. 198). We concur, however, in the last case, so far as it holds that the condemnation of part of the leased premises does not extinguish the whole rent; and that seems to have been the matter to which the attention of the court was *mainly* directed, although the case, perhaps, may be considered as laying down the doctrine that in such a case there can be no apportionment,

but that the tenant must continue liable under his personal contract to pay the whole rent, and be indemnified against this continuing liability in an additional compensation to be allowed him by the public on that account. The condemnation of the whole lot, it must be admitted, discharges the lot from the rent, so that the rent ceases thereafter to issue out of the land. If the rent must be considered as still subsisting on account of the personal obligations of the original lessee to pay it, the lessor, in case of the insolvency of the former, might justly complain that he had been deprived of his rights without compensation. And so, in like manner, we think the consideration of part of the lot discharges it from a proportionate part of the rent, and extinguishes it accordingly. This apportionment must be made by the jury, who will determine whether any thing, and how much, is due, and have reference, in making their estimate, to the *real value* of what is left to the tenant, and not to the quantity; and the plaintiff will recover accordingly. (Gilbert on Rents, 190.)

It is thus seen that, in our view of the law, it is not material in the present case, as between these parties, whether the rent, in respect to that part of the lot that was conveyed to the city and subsequently condemned to public use, was extinguished by these proceedings or not. It is enough for the present case that the lessor's conveyance of the reversion to the city apportioned the rent, and of course divested the plaintiff of his original right to recover the whole. We remark, however, that the object of the conveyance and condemnation being to appropriate part of the lot to public use, the rent due in respect to that part of it, we think, was extinguished upon the well-established principle that the union of the reversion of the land and the rent in the same person extinguishes the latter. (Gilbert on Rents, 149, 150.) We also remark that, if the whole rent remained due to the landlord, notwithstanding the conveyance to the city, as the rent issues out of every part of the land, the subsequent condemnation of part of it had the effect of apportioning the rent and extinguishing that part of it that issued out of the condemned portion of the lot. The judgment is reversed, and the cause remanded.