Mr. Justice NELSON
 

 delivered the opinion of the court.
 

 The plaintiffs derived their title in this case from Juan Cano, a colonist, in the empressario grant of Martin DeLeon, and to whom the commissioner of that colony conveyed the league of land on the 11th of April, 1835.
 

 Several objections are taken to this deduction of title, but it is not material' to notice them particularly, as they were before the court in the ease of
 
 White et al.
 
 v.
 
 Burnley
 

 *
 

 already reported, in which these several objections were ovei’ruled. The only difference between that case and the present is, that the plaintiff's, Burnley and Jones, there claimed under a deed by the commissioner to a colonist by the name of
 

 * 20 Howard, 235.
 
 *668
 
 Benito Morales for a league of land lying on the Matagorda Bay, north and adjoining this grant to Cano. Both these colonists conveyed to Leonardo Manso, one on the 27th, the other on the 20th May, 1835, from whom .the present plaintiffs derived title to both tracts. Porter, in the present suit,, represents the interests of Jones in the former, and Cook, the principal defendant in this, was a defendant in that one. We find no question here, as it respects the deduction of title under the grant of the commissioner, but what was taken in the former case, fully considered and overruled. White, one of the defendants there, and who is a defendant here, set up title under a land warrant, which he had located within the boundaries of the grant to Morales, and, besides his objections to the deduction of the plaintiffs’ title., relied on adverse possession of three years under the junior title. In the present case, Cook sets up a like defence under the location of a head-right and survey, which is within the' boundaries of the grant to Cano.
 

 Among other defences relied on in the present case, not in the former, is a plea in abatement of a suit, commenced by Burnley & Jones, against certain defendants, for the same cause of action, including the defendant Cook, in the District Court for the County of Calhoun. This plea was stricken from the record on the ground that it was put in after the defendants had pleaded to the merits, upon general principles, and came too late. And, further, that if it had been pleaded in season it would have constituted no bar to the suit in this court.
 
 *
 
 It also appears that the parties to the suit in the State court were not the same as in the present case.
 

 The defendants, in the course of the trial, offered in evidence the deposition of II. Beaumont, taken under the 30th section of the Judiciary Act, which was objected to and excluded. There is no certificate by thé magistrate that he reduced the testimony to writing himself, or that it was done
 
 *669
 
 by the witness in his presence, which omission is fatal to the deposition.
 
 *
 

 The following portions of the depositions of Moore, Schwartz, and IToweston were excluded, on objections taken by the court. The testimony had reference to the possession of the
 
 locus in quo.
 

 “
 
 Witness knows that said Cook and his tenants had continued possession of said land since the fall of the year 1849, or early part of the winter of 1849-50; say December, 1849, and down to the present time.”
 

 This is in the deposition of Moore; the portions of the testimony of the other two are substantially the same. The depositions had been taken
 
 de bene esse,
 
 without notice, in December, 1852. In January following the depositions of these same witnesses were taken on notice to the plaintiffs, and these were given in evidence by the defendants.
 

 On looking at the testimony in the first depositions, it will be seen that the witnesses had testified to the fact of the possession .of Cook, and of his tenants, naming them; and ■of the time the tenants held the possession; and when they left the premises; also, the fact of the tenancy under the agreement with Cook; and, of the improvements made by the tenants. - Whether or not these facts constituted a continuous possession by Cook and his tenants from the time they entered into possession, within the meaning of the statute of limitations, can scarcely be regarded as a simple question of fact, especially in connection with the previous testimony of the witnesses on the subject of their actual possession. We are inclined to think the question was rather one for the jury under proper instructions from the court. All the facts as it respects the possession had already been testified to by the witnesses from the commencement to its termination. Whether they constitute a continuous possession would seem to be a mixed question of law and fact.
 

 We come now to the charge of the court to the jury. The defendants put in four prayers for instructions.
 

 
 *670
 
 1.
 
 “
 
 If L. Manso was an alien enemy at the time he executed the deed to Grayson, he conveyed no title through which the plaintiffs could recover.”
 

 This question was before the court in the case of
 
 While el al.
 
 v.
 
 Burnley,
 
 already referred to, very fully considered, and overruled. We need only to refer to that case.
 

 2. “ If the plaintiffs’ title was not on record in the county vffiere the land lies, or in the general land office, at the time the defendant located his land warrant, and completed his survey, and obtained his patent, he is in the position of an innocent purchaser, and entitled to recover.”
 

 The location of Cook under his land warrant of the premises in question, was made on the 12th September, 1849, and the survey thereon the 15th May, 1850. The first location was under a land warrant issued to Gwartney, certificate No. 990, and made 5th January, 1847. But this was abandoned, and a new one made at the time above mentioned, under a certificate to J. A. "Wells, No. 5072. It appears from the testimony of E. Linn, who has been the legal surveyor of the district in which the premises are situate, -from 1838 to 1840, and from 1847 to the time when his deposition was taken, that as early as 1838 this survey of the plat of eight leagues of L. Manso, Cano, and Morales, granted by De Leon, the commissioner, was laid down on the public map of the district, and which was deposited in the general land office as a matter of record. This, according to the decisions in the courts of Texas, deprives the junior locator-of the character of an innocent purchaser. So does actual notice of the.prior grant, which is, also, proved in the present case.
 
 *
 

 3. “ If the plaintiffs’ title includes an island surrounded by water, it is bad as to the island.”
 

 There is no testimony in the case tending to prove the fact.
 

 4. “ If the jury, from the evidence, can fairly and justly construe both the plaintiffs’ and defendants’ title, so that each can stand, it is their duty to do so.”
 

 
 *671
 
 There is no evidence in the case warranting such an instruction. Besides, it was the duty of the court to construe the paper titles of the parties.
 

 The court gave but one instruction to the jury. The point of the objection to it is, that the court permitted the jury to depart from the survey of the league of land by Beaumont, who had been appointed by an order of the court to make it according to the courses, distances, and landmarks in the original survey by the government at the time the grant was made. The survey on the ground was made by Beaumont in pursuance of this order, but a civil engineer by the name of Thelipapa, made the map from the field notes. He was examined as a witness, and stated that he made the map from field notes furnished him by Beaumont. But, on comparing these field notes with those accompanying the order of survey, they were found to be different. He states that he made the map from courses and distances without any call for corners. In this respect the field notes of Beaumont differed from the original field notes, as they specified, in addition to distances, the corners of the league, in the survey by the government. There was, also, some evidence that the original survey was made by magnetic courses, and the one by Beaumont by the true course, which might account for the difference between the two surveys. The court, as will be seen, suggested this to the jury, but left the question to them to make an allowance for the difference. "We perceive no objection to this instruction.
 

 Upon the subject of this survey, it is quite apparent on the evidence, that the whole of the controversy between the parties consisted in a difference of opinion as to what line constituted a boundary upon the bay of Matagorda. The defendants insisting that there is a distinction to be made between the lagunas, some of them small, others of considerable magnitude, which are formed by tidal currents extending into the land from the bay, and, sometimes connecting with each other along the greater part of this coast, and the waters of the bay itself, while the plaintiffs insist that these lagunas belong to the bay and are parts of it, and that
 
 *672
 
 a line bounded on the lagunas is the same as bounded on the bay. It seems in this case quite plain that the grant to Cano was bounded or intended, to be bounded on the bay, as the first line given in the description of the tract commences on the bay and terminates at the place of beginning, following down the bends of the Laguna Madre, which designates the bay or great lake of Matagorda.
 

 There were other exceptions taken in the case to the rulings of the court in the progress of the trial, such as motions to postpone the trial, and to change .the venue, which it is not material to notice further than to say, that they are not available on a writ of error.
 

 After the best consideration we have been able to give to the case, we think there is no error in the judgment below, and it must be
 

 Affirmed.
 

 *
 

 See the case of White
 
 v.
 
 Whitman, 1 Curtis, 494; Piquignot
 
 v.
 
 Pennsylvania Pailroad Company, 16 Howard, 104, and Wadleigh
 
 v.
 
 Veazie, 3 Sumner, 165.
 

 *
 

 Elliott
 
 v.
 
 Piersol, 1 Peters, 335-6.
 

 *
 

 Gilbeau v. Mays, 15 Tesas, 410.