**STATE of Texas et al., Appellants,**

**v.**

**William PARKEY et al., Appellees.**

No. 3390.

Court of Civil Appeals of Texas.

Waco.

Nov. 1, 1956.

Rehearing Denied Nov. 28, 1956.

458

Henry Wade, Dist. Atty., John B. Webster, Asst. Dist. Atty., Dallas, for appellants.

McKool & Bader, Dallas, for appellees.

HALE, Justice.

Appellants, the State of Texas, County of Dallas and City of Carrollton, instituted this proceeding to condemn for highway purposes the leasehold interest of appellees, William Parkey and W. A. Smith, as lessees of a certain parcel of land and improvements thereon, situated in Carrollton. The Special Commissioners appointed to assess the damages resulting from such condemnation awarded the sum of $7,425. Appellees objected to the award on the ground that the amount thereof was insufficient. Thereafter, the court below permitted appellees, at their request, to withdraw from the registry of the court the sum of $7,425 deposited by appellants in compliance with the award made by the Special Commissioners. Appellants took possession of the leased premises on February 1, 1956. Appellees admitted in the trial court, in accordance with Rule 266, Texas Rules of Civil Procedure, that all legal prerequisites to condemnation had been complied with and that appellants were entitled to the recovery sought, except for the defense of appellees as to the amount of damages they were entitled to receive.

The case was tried before a jury and upon the conclusion of the evidence, the court submitted to the jury one special issue as follows:

"What do you find from a preponderance of the evidence was the reasonable market value on February 1, 1956 in Dallas County, Texas of the leasehold interest of the defendants Parkey and Smith in the land described in their lease with C. W. Ramsey?"

The court instructed the jury as follows:

"You are instructed that by the leasehold interest of the defendants Parkey

and Smith is meant the right to the use and occupancy of the land described in their lease from C. W. Ramsey for the balance of the lease term, upon the payment of the rental and the performance of the other terms of the lease."

"You are instructed further that by the term 'reasonable market value of the leasehold interest', is meant the price the leasehold interest would bring when offered for sale by one who desires to sell but is not obliged to sell, and is bought by one who desires to buy but is under no necessity of buying."

In response to the special issue as submitted, the jury found $20,000. Thereupon, the Court rendered judgment in favor of appellees for $12,575 as damages, that being the difference between the amount found by the jury and the amount theretofore awarded by the Special Commissioners to appellees and received by them.

Appellants predicate their appeal upon four points of error, in substance as follows: the court below erred (1) in overruling their objection to the testimony of the witness, Earl Womack, as to the market value of the property interest owned by appellees, and in overruling appellants' request that the court instruct the jury to disregard such testimony and strike it from the record on the ground that such testimony was shown to be the opinion of the witness of the reasonable rental value of the property interest, rather than its fair market value; (2) in admitting the testimony of the witness, William Parkey, setting forth the profits made by appellees in conducting their business on the leased property; (3) in refusing the request of appellants, after both sides had closed, to reopen the case for the purpose of permitting appellants to show that the purported exercise of appellees' option to extend the term of their lease was in fact a nullity; and (4) in refusing to include in its charge to the jury an instruction requested by appellants as to the measure of damages in the suit.

On and prior to September 17, 1952, C. W. Ramsey was the owner in fee simple of a parcel of land fronting along the southwest line of U. S. Highway No. 77 in the town of Carrollton. Situated on a part of his premises was a one story brick structure suitable for use as a drive-in store. The building was 60 feet in length along the highway by 30 feet in depth. On September 17, 1952, Ramsey entered into a written lease agreement with appellees, whereby he leased the property to them for a term of ten years from the date of the lease, to be occupied as a drive-in store for the sale of groceries and merchandise, appellees agreeing to pay therefore the sum of $20,100, payable $125.00 per month for the first year, $150 per month for the second year and $175 per month for the remaining eight years. The lease agreement was subject to certain conditions and covenants contained in 12 numbered paragraphs. The last paragraph in the lease provided that "Lessee may extend this lease for a further term of ten (10) years at a rental of $175.00 per month, payable in like manner and subject to the same agreements as in this lease, provided Lessee gives written notice to Lessor by July 17, 1962, and Lessee is not in default, and this lease has not been otherwise sooner terminated." C. W. Ramsey reached an agreement with appellants by which he conveyed to them for highway purposes the leased premises and adjoining lands owned by him, such conveyance having been made prior to the time when this proceeding was instituted.

On the trial of the case, appellees placed Earl Womack on the witness stand, and on direct examination the witness testified that he was engaged in the real estate business, was familiar with the leased premises involved in the suit, had examined the lease agreement, and that in his opinion the reasonable cash market value of the leasehold interest belonging to appellees on February 1, 1956 was about $42,000. On cross examination the witness testified in part as follows: "Q. Now, that figure of $42,000.00, is it your testimony that is what

someone should be willing to pay to occupy that property for seventeen years? A. Yes, sir. Q. That is what someone should pay to occupy that property? A. That is right." Immediately thereafter, counsel for appellants moved the Court to strike all the testimony of the witness from the record and instruct the jury to disregard it on the ground that "the measure of damages here is not what the rental value of this property is for the coming seventeen years, but what someone would pay to the defendants for their leasehold interest." The Court first stated in the presence of the jury that he thought the motion was meritorious but, after hearing argument from counsel for appellees, the Court then stated that he would take the motion under advisement, and after the witness had completed his testimony the motion was overruled.

In our opinion, the trial court should have promptly sustained the motion of appellants at the time it was presented to strike the testimony of the witness Womack relating to the measure of damages which might be recoverable by appellees herein, and to instruct the jurors not to consider the same. The ultimate question in the case was the amount of money which, if paid in cash on February 1, 1956, would have reasonably compensated appellees for the damages sustained by them as a result of the loss of their right to the continued use and occupancy of the leased premises in accordance with the terms of the lease agreement in controversy. As said by the Supreme Court of the United States in the case of United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729, and again in the subsequent case of United States v. 425,031 Square Feet of Land, Jersey City, New Jersey, 3 Cir., 187 F.2d 798, where a complete leasehold is taken, as in this case, the measure of damages is the value of the use and occupancy of the leasehold for the remainder of the tenant's term, plus the value of the right to renew the lease, less the agreed rent which the tenant would pay for the use and occupancy, such values to be determined by the well established willing seller-buyer rule. See also Annotation, 3 A.L.R.2d 290 et seq.

It is axiomatic that things equal to the same thing are equal to each other. Therefore, the necessary effect of the testimony of the witness Womack as it stood at the time when the motion was presented in the presence of the jury to strike out his testimony relating to values, was that the reasonable cash market value of appellees' leasehold interest was synonymous with the rental value of the leased premises for seventeen years. Not only was the witness mistaken in his expressed opinion that the reasonable cash market value of the leasehold interest of appellees amounted to the same thing as the sum of money some one should be willing to pay in order to occupy the leased property for seventeen years from February 1, 1956, but his testimony to that effect and the action of the court in finally overruling the motion to strike out such testimony must have been confusing to the jurors when they attempted to apply the court's instructions in his charge to the evidence before them in arriving at a correct answer to the special issue submitted for their determination.

In the case of Gulf, C. & S. F. Ry. Co. v. Ryon, Tex.Civ.App., 72 S.W. 72, 73, two witnesses testified for plaintiff on direct examination as to their estimates on the damage caused to the land involved in that suit by the increased flow of water. On cross examination it was developed that in making their estimates, the witnesses took into consideration improper elements of damage. The defendant thereupon filed motions to strike out the estimates and these motions were overruled. In reversing the judgment because of the error of the trial court in overruling these motions, the court said:

"The estimates having been made upon a wrong basis, the defendant was entitled to have the same withdrawn from the jury. The method proposed by the defendant would have effected that object, and, as the court did not

resort to any other means of counteracting the incompetent testimony which had been inadvertently admitted, it was error to overrule the motions to strike out. While the court gave in charge to the jury the correct measure of damage, we cannot say that the charge was so worded as to exclude from the consideration of the jury the improper evidence. The testimony concerning the amount of the damage sustained by the plaintiffs is not such that we can say that the error was harmless. The judgment will therefore be reversed, and the cause remanded." See also: Tyler S. E. R. Co. v. Hitchins, 26 Tex.Civ.App. 400, 63 S.W. 1069.

█ Appellee Parkey was permitted to testify, over timely objection interposed by appellants, that the operation of the grocery business conducted by appellees in the leased premises during the year 1954 resulted in a net profit of $4,658.30. The ground of the objection to this testimony was that the same was immaterial and inadmissible, in that this case involves the taking of the entire leased premises and does not involve any claim for damages to any portion of appellees' property not taken. The objection was overruled and appellants excepted. In our opinion, the court erred in overruling the objection of appellants to this testimony and in admitting the same in evidence. We base our conclusion upon the holding in the case of Herndon v. Housing Authority of City of Dallas, Tex.Civ.App., 261 S.W.2d 221 (er. ref.), and the authorities and discussion set forth in the opinion disposing of that case. We see no substantial difference between the material facts in the Herndon case and the facts in the record here under review in so far as the admissibility of evidence is concerned relating to profits arising from the operation of a grocery store in or upon the condemned property.

In addition to Earl Womack, three other witnesses testified on behalf of appellees that in their opinion the cash market value of the leasehold interest belonging to appellees on February 1, 1956 was $43,500, $45,000 and $47,000 respectively. Neither of these witnesses testified as to the market value of the leased premises or as to the value of the land covered by the lease or as to the value or cost of the improvements situated upon the same. Each of the four witnesses testified further that he did not consider the volume of business transacted by appellees or the net profits arising from the same at the time he made his estimate of such value, but that his later acquired knowledge of such profits tended to confirm or enhance his original estimate of the use value of the property. Each also testified that his estimate of value was based upon the assumption that appellees would extend their lease for an additional ten years after September 17, 1962, although each admitted that he had no way of looking into the future so as to know with any degree of certainty what the prevailing business conditions might be seven years hence.

The last witness to testify in the case was appellee, Parkey. The last testimony he gave was that he had already given written notice to Ramsey, the lessor, that appellees were exercising their option to extend their lease for a further term of ten years. After both sides had closed, but before the court had submitted any charge to the jury, appellants requested permission to reopen the case for the purpose of showing that the purported exercise of appellees' option to extend the lease for an additional ten years occurred after the lessor had parted with his title to the leased property and with full knowledge that appellants had acquired the property for highway purposes, and that the purported exercising of such option was a nullity. The court refused appellants' request to reopen the case and appellants excepted. The record shows that if appellants had

462

been permitted to do so, they would have proved, in the presence of the jury, that the purported exercising of the option as testified to by appellee Parkey, was evidenced by a note written by him in longhand during the progress of the trial, at a time when he knew that the lessor owned no interest in the leased property because of the fact that he had conveyed the same to appellants.

■ We recognize that a motion to reopen a case for the purpose of introducing further evidence in the cause is addressed to the sound discretion of the trial court. However, as said in 88 C.J.S., Trial, § 104, p. 218, "such discretion is to be liberally exercised in behalf of allowing the whole case to be presented, for the best advancement of the ends of justice." The fact that appellees purported to exercise the option during the trial of the case, with full knowledge of such circumstances as to relieve them from any liability to pay the agreed rental in the lease contract for an additional term of ten years after September 17, 1962, indicates that the purported exercise of the option was solely for the improper purpose of bolstering the amazing testimony of their expert witnesses on the damage issue. It appears that counsel for appellants acted with due diligence in presenting their motion to reopen the case as soon as they ascertained the true facts which they sought to develop before the jury. The appellants doubtless could have presented the desired testimony within five minutes after the case was reopened, and we think the trial court erred in refusing to grant them permission to do so. 41-B Tex.Jur. p. 130, et seq.; Massachusetts Bonding & Ins. Co. v. Florence, Tex.Civ.App., 216 S.W. 471; McGee v. Stark, Tex.Civ.App., 127 S.W.2d 589, pt. 10 (er. dis., judg. cor.).

■ At the time and in the manner required by law, appellants duly requested the court below to instruct the jury in his charge as follows: "In determining the market value of defendants' leasehold interest, the amount of rents which defendants would be obligated to pay for the unexpired term of their lease should be deducted from the reasonable cash market rental value of the leased premises for said unexpired term." The court refused the foregoing request. Certainly the requested instruction constituted a correct statement of the law applicable to the elements of damages recoverable in this case. Even though the definitions which the court gave the jury in his charge as to the meaning of "leasehold interest" and "reasonable market value of the leasehold interest" might have been correct abstract definitions of such terms, yet we do not think the instructions and definitions so given by the court to the jury clearly instructed the jury that in determining the reasonable market value of the leasehold interest of appellees the amount of rent which appellees were obligated to pay should be deducted from the value or market value of the use and occupancy of the leased premises for the remainder of appellees' term. Since the court below saw fit to submit to the jury in one issue the total amount of compensatory damages recoverable by appellees herein, it is our view that the court erred in refusing to include in its charge to the jury the instruction requested by appellants.

■ While this Court does not have the prerogative of finding the existence of issuable facts in any case, we are required to determine from the record as a whole whether any procedural error or errors probably resulted in the rendition of an erroneous judgment. There may be some doubt as to whether each of the four errors above discussed was of such prejudicial effect in and of itself as to constitute reversible error. But we are constrained to hold that the cumulative effect of such errors was undoubtedly such as to require a reversal of the judgment appealed from.

Appellants introduced evidence to the effect that the fair market value of the leasehold interest owned by appellees was

not more than $4,656. The testimony on their behalf indicated without any dispute that the ground covered in the leased premises was worth about $40 per front foot, that the improvements were worth about $14,000 and that the rental value of commercial property was usually placed at such amount as to yield a gross return to the owner of the leased property of 12% per annum on his capital investment. We fail to see why the leasehold interest belonging to appellees should be more valuable in this case than the fee simple title to the leased property. The photographs of the premises here in controversy show that there was a filling station along the highway about 100 feet from the store building, but with this exception there was no other building of any kind in close proximity to the leasehold. No reason was shown why another similar drive-in store building could not have been erected on either side of the leased premises. Under the existing conditions of competition in our prevailing system of free enterprise, it is highly improbable, we think, that any person would pay $20,000 cash in a lump sum, and pay the additional sum of $35,000 in equal monthly installments over a period of seventeen years, in order to secure the use and occupancy for such period of time of property that was not worth more than $17,000.

We cannot determine from the verdict of the jury or the evidence in the case, what sum of money a willing buyer might have paid on February 1, 1956 for the right to use and occupy the leased premises from that date to the end of the term on September 16, 1962 or what sum, if any, such buyer might have been willing to pay on that date for the right to renew the lease for an additional ten years from September 17, 1962 to September 16, 1972. Furthermore, we cannot say with any degree of certainty that the jury intended to find or did find that $20,000 was the amount of money which a willing buyer would have paid in a cash lump sum on February 1, 1956, for the use and occupancy of the leased premises during any specified period of time, as distinguished from the amount such buyer would have agreed on that date to pay in monthly installments over the specified period of time, as provided by the terms of the lease agreement.

Accordingly, each of appellants' points of error is sustained, the judgment appealed from is reversed and the cause is remanded to the court below for another trial.