**Edward JOSEPH, Appellant,**

v.

**Nora Todd ELLIOTT et vir, Appellees.**

No. 10801.

Court of Civil Appeals of Texas.

Austin.

March 8, 1961.

Rehearing Denied April 12, 1961.

Cofer & Cofer, Douglass D. Hearne, Austin, for appellant.

Hardy Hollers, Austin, for appellee.

HUGHES, Justice.

In our opinion, this is not a proper case for the use of the remedy afforded by our declaratory judgment statute, Article 2524-1, Vernon's Ann.Civ.St.

For the purpose of this opinion, we accept as established the following statement taken from the brief of appellees:[1]

> "While it is not shown in the record, by agreement of counsel, both Appellant and Appellees appealed from the order of the commissioners in the condemnation proceedings to the County Court of Travis County, Texas; said case is still pending on the docket of said court."

The very issue presented by the parties for our decision here is before the County Court in the condemnation case.[2] We quote from Frankfurt v. Texas Turnpike

---

1. Since this matter goes to our jurisdiction, or at least to the propriety of the exercise of our jurisdiction, we could initiate disquisition dehors the record. 15 Tex.Jur.2d p. 434.

2. We accept the statement of the case, as presented by the parties, made in the dissenting opinion of GRAY, J.

Authority, Tex.Civ.App., Texarkana, 311 S.W.2d 261, 265:

> "The rule seems to be well settled in Texas that the payment of rentals is a factor which must be considered in arriving at the fair market value of a lease. See Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575, er. ref., n. r. e.; Nichols on Eminent Domain, Sec. 12.42(3); State v. Parkey [Tex. Civ.App., 295 S.W.2d 457], supra. Business judgment and self-interest would dictate that a voluntary buyer be concerned with the seller's obligation to pay rentals together with all the other terms and conditions of a lease contract."

We quote the following from an article by Joseph H. Taulane in 29 American Law Review, pp. 35–60, attached to appellant's brief herein:

> "Whether or not the tenant continues liable for the rent is a most important element to be taken into consideration in estimating the landlord's and tenant's damages caused by the appropriation. It depends upon what answer we make to this inquiry, that the respective amounts of their compensation is determined."

Why, then, should we decide an issue which is properly before the County Court, and make two cases out of one?

■ The general rule, which should suffice to prevent meddling on our part, regarding the exclusive nature of the jurisdiction of the County Court in condemnation cases, is stated in Compton v. Texas Southeastern Gas Co., Tex.Civ.App., Houston, 315 S.W.2d 345, 349, writ ref., N.R.E., as follows:

> "Under the authorities as we view them the County Court's jurisdiction in a condemnation suit attaches immediately upon the filing of a petition containing the allegations requisite to condemn property under the statutes which

describes the right-of-way or easement sought to be condemned with the certainty required in describing land in a deed. Ellis v. Houston & T. C. Ry. Co., Tex.Civ.App., 203 S.W. 172, writ ref.; Texas Electric Service Co. v. Perkins, Tex.Com.App., 23 S.W.2d 320; Miers v. Housing Authority of City of Dallas, 153 Tex. 236, 266 S.W.2d 842; 16 Tex. Jur. 664, Eminent Domain, Sec. 324. The rule is well settled in this State that after a County Court has acquired jurisdiction in a condemnation suit, no other court is authorized to interfere with its proceedings. Ellis v. Houston & T. C. Ry. Co., supra; Wilson v. Donna Irrigation Dist., Tex.Civ.App., 8 S.W.2d 187, no writ history; Benat v. Dallas County, Tex.Civ.App., 266 S.W. 539; Gill v. Falls County, Tex.Civ. App., 243 S.W.2d 277; Missouri, Kansas, Texas R. Co. v. Jones, Tex.Com. App., 24 S.W.2d 366."

See also 16 Tex.Jur. p. 640, where it is stated that, "So long as it does not contravene constitutional limitations, a County Court which has obtained jurisdiction of a condemnation proceeding, has full authority to pass on all questions that arise * * it may adjudge against the condemnor damages in any amount which the law and the facts may justify. * * *"

■ Directly and specifically in point is the case of Pickens v. Hidalgo County Water Control and Improvement Dist., 284 S.W.2d 784, 786, by Chief Justice Murray of the San Antonio Court of Civil Appeals, no writ history. This was a suit for a declaratory judgment filed in the District Court pertaining to a pending condemnation suit in the County Court. We quote from that opinion:

> "When the condemnation proceedings were filed in the County Court at Law, that court had exclusive jurisdiction to allow appellants compensation for all property taken, injured or damaged by the taking of the surface easement sought by appellee, including full

compensation for appellants' water and water rights. * * *

"A court will not grant a declaratory judgment if the same issues between the same parties were involved in another cause pending at the time of the filing of the declaratory proceedings. The rule is stated thusly in 135 A.L.R. at pages 934–5:

" 'Although there is apparently some conflict on the question, the rule which may be formulated from a reading of the cases as a whole, and under which most of the cases with apparently conflicting results may be reconciled, seems to be that jurisdiction of a declaratory judgment action will not be entertained if there is pending, at the time of the commencement of the declaratory action, another action or proceeding to which the same persons are parties, in which are involved and may be adjudicated the same identical issues that are involved in the declaratory action. (This rule is sometimes predicated on the power of the court, as a matter of judicial discretion, to refuse to entertain jurisdiction of the declaratory action, and sometimes on complete lack of jurisdiction.)'

"The following cases support the above rule: Jefferson Co. ex rel. Coleman v. Chilton, 236 Ky. 614, 33 S.W.2d 601; Joseph v. City of Ranger, Tex. Civ.App., 188 S.W.2d 1013; Georgia Industrial Realty Co. v. City of Chattanooga, 163 Tenn. 435, 43 S.W.2d 490. See also, 16 Am.Jur. 295; Anderson, Actions for Declaratory Judgments, Vol. 1, p. 47.

"Appellants call to our attention that the trial court, having found in effect that the County Court at Law had exclusive jurisdiction of the issues raised in the present suit and that it therefore was without jurisdiction, should have entered a judgment dismissing the cause, instead of a declaratory judgment that appellants take nothing. We sustain this contention."

See also 19 Tex.Jur.2d, Declaratory Judgments, Sec. 13. We also quote from 26 C.J.S. Declaratory Judgments § 20:

"As a general rule where a statute provides a special form of remedy for a specific type of case, the statutory remedy must be followed, and under such circumstances a declaratory judgment will not be granted. This is especially so where the statutory remedy is exclusive, or where the effect would be to interfere with the parties' right to appeal. On the other hand, it has been held that an action for a declaratory judgment is not barred by the fact that a statutory remedy is available, and an action for a declaratory judgment may be maintained, although a statutory method of determining the controversy is provided, where a showing of special circumstances sufficient to justify a failure to utilize the remedial provisions of the statute, is made, as where the statutory remedy is not an adequate substitute, and does not provide relief."

From § 22, id., we quote:

"The rule that a declaratory judgment proceeding will not ordinarily be entertained where another remedy is available is especially applicable where another appropriate action involving the same subject matter and issues is already pending when the declaratory judgment proceeding is commenced, and in such a case the court, in the subsequent declaratory judgment action, except to the extent that it may be necessary, cannot declare rights as to the matters involved in the prior pending action, since such decisions and declarations must be made in the first instance by the court whose power is invoked and which is competent to decide them. It has been held, however, that the mere pendency of another action between the same parties, without more, is no basis for refusing declara-

tory relief. A declaratory judgment may not be refused because of the pendency of another suit, if the controversy will not necessarily be determined in such suit. Where speedy relief is necessary to the preservation of rights which otherwise may be impaired or lost, courts will entertain an action for a declaratory judgment as to questions which are determinable in a pending action or proceeding between the same parties."

It is obvious that none of the exceptions authorizing a declaratory judgment proceeding pertaining to the subject matter of a pending suit is applicable here.

We conclude by quoting from Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 99 F.2d 665, 669, as follows:

"It is no answer to a suit for a declaratory judgment that the plaintiff may have an adequate remedy elsewhere or that he seeks to establish a defense to a pending claim rather than affirmative relief; but it is well established that the benefits of the statute should not be extended unless there is an actual present controversy between the parties, and even then the court should not decide the disputed question if the result would be merely to anticipate the trial of an issue involved in a pending case or to determine the validity of a defense which could be tried equally well therein or to try a controversy piecemeal without complete decision of the matters in dispute."

We reverse the judgment and, insofar as the matter appealed is concerned, we dismiss the suit.

Reversed and dismissed.

GRAY, Justice (dissenting).

The question for decision is: When the lease contract makes no provision for abatement of rent and only a part of leased land is taken by condemnation does the tenant remain liable for future payments of rent on the part taken?

On February 15, 1946, appellant, Edward Joseph, leased from appellees, Nora Todd Elliott and her husband Roy C. Elliott, 12.5 acres of land located in the City of Austin. The lease contract provided for a primary term of five years beginning April 1, 1946 and ending March 31, 1951 with options to renew the lease for a second term of five years ending March 31, 1956 and for a third term of ten years ending March 31, 1966. The agreed rent was payable on the first day of each month in advance and for the third period such rent was $166.67 per month.

The lease contract made no provision for the abatement of rent in the event the land, or a part thereof, was taken by condemnation. Also the contract did not provide for recission for the failure to pay rent. It did provide:

"Lessors do hereby bind themselves, their heirs, executors and administrators to Warrant and Forever Defend during the term hereof, all and singular, the said premises unto the said Lessee, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof."

Appellant went into possession of the leased land, exercised his options of renewal and at the times material here he was in possession for the third term of the lease.

In July, 1959 the City of Austin instituted condemnation proceedings against appellees and appellant to condemn 3.87 acres of the leased land for highway purposes. An award of damages was made to appellees and to appellant for their respective interests in the 3.87 acres of land and on October 21, 1959 the award was paid into court and the city took possession of the 3.87 acres. Appellant has continued his possession of the remainder of the land and has tendered to appellees $115 per month

rental on the land remaining which appellees have refused to accept.

Appellant filed this suit against appellees seeking a declaratory judgement declaring a proportionate abatement of rent in the ratio that the number of acres taken by the City of Austin bears to the total number of acres leased, and further for injunctive relief restraining appellees from disturbing his possession of the remaining land.

Appellees answered and filed a cross action wherein they prayed to recover judgment against appellant for the rent provided in the contract and for recission of the contract because of appellant's failure to pay the rent as provided therein.

The trial court rendered judgment that appellant take nothing by his suit; that appellees recover judgment for past due rentals for the months of November, December, 1959 and January and February, 1960 at the rate of $166.67 per month and denied appellees a recission of the rent contract.

There is no appeal from that part of the judgment denying appellees a recission of the rent contract. That matter is not before us and it will not be further noticed.

Appellant presents one point which is that the trial court:

> "* * * erred in holding that, even though the City of Austin had condemned for highway purposes 3.87 acres of the 12.5 acres covered by plaintiff's lease, and he no longer enjoyed the use of the portion condemned for the balance of the term of the lease, he was not entitled to a proportionate abatement of his rent accruing after the taking."

The record before us consists of the transcript containing findings of fact and conclusions of law by the trial court. This record reveals the facts as stated supra.

The record in the condemnation proceedings is not before us and the trial court made no findings as to that matter other than that the city instituted the proceedings against appellees and appellant, paid the award of damages into court, took possession of the 3.87 acres of land on October 21, 1959 and ousted appellant and appellees of their possession and title thereto.

The majority accepts the statement of appellees which is to the effect that the award of the commissioners has been appealed. They then conclude that the cause as to damages for the taking of the property involved is pending. It is my opinion that this fact is not fatal to this declaratory judgment action. On appeal from the commissioners' award to the county court that court can decide only the issues of damages. The liability of appellant for payment of rent on the part taken would be an element of damages in that proceeding yet the effect of the judgment on appellant's liability for the payment of future rents would not likely be declared.

It is my opinion that this is a proper case for declaratory relief. Here the parties are persons interested under a written contract, their rights are affected by such contract and they seek to "obtain a declaration of rights, status, or other legal relations thereunder." Sec. 2 of Art. 2524–1, Vernon's Ann.Civ.St. The fact that "further relief is or could be claimed" is not fatal to the proceeding and does not affect the jurisdiction of the court. Sec. 1 of Art. 2524–1 supra.

In Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 714, 172 A.L.R. 837, the court decided the question of whether or not the existence of another remedy bars the right to maintain an action for declaratory judgment. The court noted that the decisions are in conflict on that question, cited texts and numerous decisions and said:

> "After reading many of the decisions, we are of the opinion that those holding that the existence of another adequate remedy does not bar the right to maintain an action for declaratory judgment are supported by the better reasoning. They give liberal scope to

the Uniform Declaratory Judgments Act and thus aid in the accomplishment of the purpose for which it was enacted. They do no violence to its language, for it is written in broad and general terms and contains the express provision that it 'is to be liberally construed and administered.' Its first section confers upon the courts the power 'to declare rights, status, and other legal relations whether or not further relief is or could be claimed.' Its second section provides that any person interested under a deed, will, written contract, etc., or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract, etc., may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, etc.

"In rejecting the contention that an action for a declaratory judgment under the Federal statute is not maintainable where there is available another adequate remedy, the court, in Penn v. Glenn, D.C., 10 F.Supp. 483, 486, said: 'There is neither expressed nor implied in the Federal Declaratory Judgment Act any such restriction upon its use; and this court is not warranted in writing into it any such restriction.' The same is true of the Uniform Declaratory Judgments Act, and we believe that a court should not write the restriction into it."

Railroad Commission v. Houston Natural Gas Corp., Tex.Civ.App., 186 S.W.2d 117, er. ref., w. m., cited in Cobb v. Harrington, supra, was a suit for a declaratory judgment construing statutes pending an appeal to the commission from an ordinance of the City of Palacios reducing rates for gas sold to the public. The court held that: The acts of officials which are not lawfully authorized are not acts of the State, and an action against the officials by one whose rights have been invaded or violated by such acts, for the determination and protection of his rights, is not a suit against the State within the rule of immunity of the State from suit.

In this State it is well established that when property is taken by condemnation the owner is entitled to just compensation for the taking and that "owner" includes the owner of the fee, a lessee for years and any other person having an interest in the property which interest will be affected by the taking. Fort Worth & Denver S. P. Ry. Co. v. Judd, Tex.Civ.App., 4 S.W.2d 1032, er. dism.

Sections 1 and 3 of Art. 3265, Vernon's Ann.Civ.St. provide:

"1. The commissioners shall hear evidence as to the value of the property sought to be condemned and as to the damages which will be sustained by the owner, if any, by reason of such condemnation and as to the benefits that will result to the remainder of such property belonging to such owner, if any, by reason of the condemnation of the property, and its employment for the purpose for which it is to be condemned, and according to this rule shall assess the actual damages that will accrue to the owner by such condemnation. * * *

"3. When only a portion of a tract or parcel of a person's real estate is condemned, the commissioners shall estimate the injuries sustained and the benefits received thereby by the owner; whether the remaining portion is increased or diminished in value by reason of such condemnation, and the extent of such increase or diminution and shall assess the damages accordingly."

Appellant's leasehold estate in the 3.87 acres of land was property. As such it was subject to condemnation by the city and appellant was entitled to compensation for his damages for its taking as also were appellees for the taking of the fee— that is both were entitled to compensation for the loss sustained, however the total

compensation to all parties must not exceed the total market value of the land taken.

In arriving at the value of property and the interests therein taken by condemnation it is proper to determine the value of the property as though it was owned by one person and to then apportion the amount of such value among the respective owners. Reeves v. City of Dallas, Tex. Civ.App., 195 S.W.2d 575, er. ref., n. r. e. There the entire tract upon which there was a lease was taken. At page 582 of the opinion the court said:

"All such matters must be taken into consideration in determining the value of the condemned property as a whole; the land value thus determined carries with it the value of the lease or other conflicting claims, and the value of the leasehold carries with it all incidental items making up its apportioned value. * * *"

The same announcement is made in Aronoff v. City of Dallas, Tex.Civ.App., 316 S.W.2d 302, er. ref., n. r. e., and the compensation is for damage to property rather than for damage to the parties. The market value of property condemned is the compensation which the owner is entitled to receive. In arriving at the total market value of property its value for any use to which it may be put is to be included. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979.

As will be later noticed there has been a different rule applied as to the tenant's liability for future rents when the entire tract is taken and when only a part is taken. While I am not here concerned with the rule applicable when the entire tract is taken I think the willing seller and willing buyer test is applicable in finding the value of the fee and also the value of the leasehold estate in the part taken.

In Reeves v. City of Dallas, supra, the court said at page 577 of 195 S.W.2d:

"We think the primary and controlling issues involved in the suit are:

(1) The reasonable market value of the land and improvements as a whole, encumbered with the lease contract; and (2) the reasonable market value of the leasehold apportioned to the owner thereof. * * *

and at pages 581 to 582:

"If, perchance, the land condemned is encumbered, as here, with a lease or other conflicting claims, the condemnor is liable not only for the reasonable market value of the land taken, but also for the reasonable market value of other conflicting claims as a whole. The land, lease, and all other conflicting claims on the property condemned must be determined as if all the property was in a single ownership."

The tenant's liability for future rents was not an issue. However the court said that the value of the fee was increased or diminished by the value of the lease which was an element to be considered by the jury in arriving at the value of the fee. That case does not decide the question here presented but it does decide issues in the condemnation proceeding out of which this controversy arises.

The question for our decision here has not been decided by the Texas appellate courts.

The parties here agree that the general rule is that when the whole of a tract of land is taken by condemnation a lease thereon is terminated and that the tenant is not liable for the payment of rent accruing after the taking. See Annotations: 163 A.L.R. at page 680 et seq.; 3 A.L.R.2d at page 328 et seq. Except insofar only as it may be persuasive of a decision of the question presented this rule is not material here for which reason I will not pursue it further.

There are opposite views by the courts of other jurisdictions as to the continuing liability of the tenant for the payment of rent on the part of property taken when

only a part of the estate is taken by condemnation. While all of the States have not passed on the question it appears that the courts that have approach the question differently. See Annotations in 43 A.L.R. 1177 et seq.; 163 A.L.R. 682 et seq. and 3 A.L.R.2d 330 et seq.

Some of the courts that hold a partial taking by condemnation of leased land does not relieve the tenant from the payment of rent on the part taken appear to approach the question by saying that where a part of leased land is taken the tenant cannot claim an eviction against his landlord and be released from the payment of rent for the reason that the tenant like other persons holds his property subject to the right of the sovereign to take all or a part of it; that the taking operates upon the tenant's interest as property for which he is compensated and that he is not relieved of liability to pay rent, and that the taking does not amount to a breach of the covenant of quiet enjoyment because that covenant is against eviction by reason of a defect in the title of the landlord. Another approach is that in awarding the tenant damages his liability for the payment of rent on the part taken is an element of such damages which amounts to the lessee's "restoration damage" or that it is "tantamount to, an abatement in the rental value of the premises." Generally the above statements appear to be the approaches to the question in the cases cited as supporting the holding in Yellow Cab Co. v. Stafford-Smith Co., 320 Ill. 294, 150 N.E. 670, 43 A.L.R. 1173.

I do not notice the cases where the decisions as to the liability of the tenant for the payment of rent when land is taken by condemnation rests on statutes of the respective States.

In holding that the taking by condemnation of a part of the leased land apportions the rent; that it was extinguished as to the part taken, but left subsisting as to the part remaining, the court in Board of Levee Com'rs v. Johnson, 66 Miss. 248, 6 So. 199, 201, said:

"In * * * cases in which it was held in these states that the taking of a part of the premises did not operate as an apportionment of the rent, the principle is distinctly announced as the reason for the decisions, that the taking is not the act of the landlord, and, not being an eviction by him, the rent cannot be apportioned. It is difficult to perceive how the quantity of the estate taken can vary the relations of the parties, since in the one case, as the other, the act is the act of the state. We are wholly unable to perceive why an act by the state shall be held to be an eviction where the whole premises are taken, thereby dissolving the relation of landlord and tenant, while the same act in reference to only a portion of the premises, is not pro tanto also an eviction, followed by an apportionment of the land reserved. In Biddle v. Hussman, 23 Mo. 597, (supra) it is held, and we think, with reason, that the exercise of the sovereign power of eminent domain, by which a portion of the demised premises is taken, operates as an apportionment of the rent and dissolves the relation of landlord and tenant pro tanto. The rule announced in that case for the apportionment of the damages meets our approval; under it complete justice is done both to the landlord and the tenant, and a multiplicity of suits is prevented."

In the cited case of Biddle v. Hussman, 23 Mo. 597, the court said:

"The condemnation was a reassumption by the state of her original title to the land under the right of eminent domain. It was a revocation of the landlord's title, and may well be considered as extinguishing all rights depending upon the continuance of that title."

It is to be noticed that the announcements in the above annotations and deci-

sions do not rest on the application of a rule of damages recoverable in the condemnation proceedings.

A correct answer to the question here presented, in my opinion, necessarily hinges on the unquestioned rule that when property is taken for public use the owner is entitled to just compensation which is the market value of the property taken or damaged.

In my opinion the question of the amount of compensation due the parties for the taking of their property is not before us. We are in no way advised as to the elements of damage considered in arriving at the amount of the awards. However it is my opinion that we may, and for the purpose of this decision must, assume that proper elements of damage were considered in finding the market value of the property taken and that the awards made constituted the amount of such value as found. Otherwise we would allow double recovery to one or the other, or both, of the parties which would of course allow unjust enrichment.

As to appellees the value of the land would include the value of its use for any purpose and necessarily would include its use for rental purposes. City of Waco v. Messer, 124 Tex. 417, 78 S.W.2d 169. In Rowland v. City of Tyler, Tex.Com.App., 5 S.W.2d 756, at page 760, the court, in reviewing the action of a board of equalization, said:

"It cannot be doubted that the amount of rental a particular piece of property produces is an important element to be considered in fixing the value of that property."

In City of La Grange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243, 246, the court said:

"In a proceeding for the condemnation of a part of a tract of land for street or road purposes, it is presumed that the amount of damages allowed covers all lawful elements of damages,

whether direct or consequential, that could reasonably have been foreseen and determined at the time of condemnation; and where a part of a tract of land is condemned for street or road purposes, the owner cannot recover in a subsequent proceeding for consequential damages to the remainder of the land which he ought reasonably have foreseen and presented in the condemnation proceeding. State v. Brewer et ux., [141 Tex. 1] 169 S.W.2d 468."

Curtiss Aeroplane & Motor Corp. v. Haymakers Warehousing Corp., Tex.Civ. App., 264 S.W. 326, 329, er. dism., was a suit by the landlord against the tenant for damages for holding over after the expiration of its lease. A subsequent lessee of the landlord intervened and alleged that it had been damaged by the tenant holding over. In its opinion the court said:

"If the landlord recovers the profits he might have made by using the premises himself, such profits necessarily include the value of the use of the premises, and he cannot recover such value as profits and in addition require the tenant, who, by holding over, has prevented him from making the profits, to pay the market rental value of the premises. To permit such double recovery would be to hold, in effect, that the owner of the property, who has its full use and enjoyment, could recover from another the value of such use and enjoyment."

The above language is appropriate here because the award to appellees as an element of their damages was the amount of rental from the 3.87 acres. And in this proceeding they seek to recover from appellant rent the value of which they have received from the city. This they are not entitled to do. City of Waco v. Messer, supra.

If it be said that we must here determine the elements that make up the value

of appellant's leasehold estate in the 3.87 acres of land those elements are set out in the quotation from Reeves v. City of Dallas [195 S.W.2d 582], supra. Applying those elements to the facts here and especially "the terms and conditions of the lease contracts" for the purpose of applying the willing purchaser and willing buyer test, it is obvious that the obligation to pay rent as provided in the contract is an item that a willing purchaser would consider. It is also obvious that such purchaser would not include in his purchase price to the tenant the amount of rent he would be obligated to pay the landlord. If he did then in this case the landlord would receive rent from the purchaser which had been paid to him by the city.

State v. Parkey, Tex.Civ.App., 295 S.W. 2d 457, 462, er. ref., n. r. e., was a condemnation case wherein the State instituted proceedings to condemn for highway purposes a leasehold interest in land. The appeal was from a trial by jury on the issue of damages. The judgment was reversed and the cause was remanded. There was presented a point that the trial court erred in refusing to instruct the jury that:

"In determining the market value of defendants' leasehold interest, the amount of rents which defendants would be obligated to pay for the unexpired term of their lease should be deducted from the reasonable cash market rental value of the leased premises for said unexpired term."

The court said:

"Certainly the requested instruction constituted a correct statement of the law applicable to the elements of damages recoverable in this case. Even though the definitions which the court gave the jury in his charge as to the meaning of 'leasehold interest' and 'reasonable market value of the leasehold interest' might have been correct abstract definitions of such terms, yet we do not think the instructions and definitions so given by the court to the jury clearly instructed the jury that in determining the reasonable market value of the leasehold interest of appellees the amount of rent which appellees were obligated to pay should be deducted from the value or market value of the use and occupancy of the leased premises for the remainder of appellees' term. Since the court below saw fit to submit to the jury in one issue the total amount of compensatory damages recoverable by appellees herein, it is our view that the court erred in refusing to include in its charge to the jury the instruction requested by appellants."

Appellees cite Frankfurt v. Texas Turnpike Authority, Tex.Civ.App., 311 S.W.2d 261, 266—no writ history. That was a condemnation case and the fee and also a leasehold interest were involved and the trial was as to the amount of damages. The court approved the following instruction to the jury:

"By the term, 'leasehold interest of the Defendant, Johnson,' as used in this charge is meant the right of the Defendant, Johnson, to the use and occupancy of the land described in the lease with the Defendants, Sol Minzer and Victor Frankfurt, for the balance of the lease term as provided for in said lease upon the payment of the rental and the performance of the other terms of the lease."

and also approved the trial court's refusal to give an instruction similar to that approved in State v. Parkey, supra. The court said:

"Each of the Turnpike Authority's valuation witnesses apparently applied the formula set out in the Sacramento & San Joaquin Drainage Dist. case (a California case [Sacramento & San Joaquin Drainage Dist. v. Truslow, 125 Cal.App.2d 478, 270 P.2d 928, 271 P.2d 930]) in making their estimates. Each testified that the leasehold estate

of W. B. Johnson in the part taken had no value because the rental reserve in the lease was equal to or in excess of the reasonable market rental value, but each allocated from $3,800 to $4,000 damages to the lessee as representing his interest in the part taken, the reason given for such allocation being a recognition of the fact that during the remaining term of the lease appellant Johnson would have to continue paying rent for the property taken although he would not have the use and enjoyment thereof. Under authorities mentioned, the appellant was not entitled to show the value of the leasehold without reference to contractual rentals, and the trial judge properly refused examination of witnesses in this respect; likewise, the court properly refused the instruction to the jury that rental contracted for in the lease be disregarded in determining the leasehold fair market value for the remainder of the term."

It is to be noted that the instruction which was approved was substantially the same as was given in State v. Parkey, supra and which the court there said "might have been correct abstract definitions of such terms." It is also to be noticed that before making the statements above quoted the court said:

"The rule seems to be well settled in Texas that the payment of rentals is a factor which must be considered in arriving at the fair market value of a lease. See Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575, wr. ref., n. r. e.; Nichols on Eminent Domain, Sec. 12.42(3); State v. Parkey, supra. Business judgment and self-interest would dictate that a voluntary buyer be concerned with the seller's obligation to pay rentals together with all the other terms and conditions of a lease contract."

Justification for the court's holding must be found, if at all, in the testimony of the witnesses which the court referred to.

What has been said shows that the trial court's judgment allows appellees to recover rent from appellant the value of which they have received from the city. City of Waco v. Messer, supra.

I would reverse the judgment of the trial court insofar as it holds appellant liable to pay rent at $166.67 per month since the taking of the 3.87 acres of land and render judgment for appellees for rent at the rate of $115 per month from the date of the taking. However since appellant has made a tender of this rent interest thereon should not be allowed.

### On Appellant's and Appellees' Motions for Rehearing.

HUGHES, Justice.

All parties complain of our action in refusing to decide the issues presented on their merits.

In addition, appellant suggests that our judgment of dismissal will permit him to pay nothing and plead the statute of limitations when later sued. To forestall this possibility we have concluded to modify our judgment by abating the suit until final disposition of the condemnation suit or until the parties by agreement dispose of this controversy.

Appellees assert that we are without authority to abate the suit because neither party filed a plea in abatement. We disagree.

In our opinion, the parties cannot, by failure to plead in abatement, compel us to bring ourselves in unseemly conflict with another local court of coordinate jurisdiction.

We quote from Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063, 1071, as follows:

"Mr. Freeman, discussing the very question here involved (in Volume 1, § 335), says:

" 'It seems impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy between the same parties. If either has authority to act, its action must necessarily be exclusive, and therefore it is our judgment that whenever either the state or the national courts acquire jurisdiction of an action and the parties thereto, this jurisdiction cannot be destroyed, diminished, or suspended by one of the parties bringing an action in another court, and that any judgment or order of the latter court is void so far as it conflicts with any judgment or order of the court first acquiring jurisdiction.'

"This extract from Freeman we believe states the sound rule, and the only rule which will prevent races from court to court by vigilant counsel, such as this record discloses, and that conflict in the exercise of judicial power in evidence here, which we believe was never contemplated under our judicial system. Courts are erected to settle controversies, not to multiply them. At any rate, the rule announced by Freeman is the one we adopt, and is consistent with that declared by Justice Lipscomb in 1852 in the Burdett case [Burdett v. State, 9 Tex. 43], cited above.

"What has been said is not in conflict with the doctrine of various cases that the pendency of a suit in another jurisdiction must be seasonably pleaded in abatement, that the plea may be waived, and that final judgment by default, or, in the absence of pleading and proof of the pendency of a prior suit will be sustained. See the cases of Cook v. Burnley, 11 Wall. 659 [11 U.S. 659], 20 L.Ed. 29; Cook v. Burnley, 45 Tex. 97; Blassingame v. Cattlemen's Trust Co. [Tex.Civ.App.], 174 S.W. 900; Cattlemen's Trust Co. v. Blasingame (Tex.Civ.App.) 184 S.W.

574; McCoy v. Bankers Trust Co. (Tex.Civ.App.), 200 S.W. 1138; see also 1 Ruling Case Law, pp. 19, 20.

"These opinions are authority for the proposition that, since the pendency of a prior suit is predicated upon a state of facts, the facts must be seasonably alleged and proved, and, unless this is done, the judgment of the subsequent court is conclusive on the fact of jurisdiction as upon any other fact. Freeman on Judgments (5th Ed.), Vol. 2, §§ 660, 662. This does not militate against our conclusion that, once the necessary facts are pleaded and admitted or proven, or shown by the undisputed record, as in this case, the subsequent suit is abated and its orders void for want of jurisdiction."

In McCurdy v. Gage, Tex.Com.App., 123 Tex. 558, 69 S.W.2d 56, 59, it was stated:

"In this state, as well as in courts of other jurisdictions, both federal and state, we have courts of co-ordinate jurisdiction, and it is highly important that the spirit of comity should at all times exist between such courts and a conflict of jurisdiction should be avoided. In order to maintain an orderly procedure and prevent unseemly conflicts between two courts when an action has been brought in one court and thereafter another action is filed in another court of coordinate jurisdiction, if it is thought that the two actions involve the same subject-matter, it is the duty of those engaged in the suit first filed to deal frankly with the court in which the second action is filed and in good faith make a full disclosure to the court with respect to what are the facts and issues involved in the case first filed in the other court."

The facts were fully disclosed by this record, and our duty is clear, whether the parties pray for abatement or not.

It is also suggested that the issues in this case are not the same as in the condemnation case.

The principal issue in this case is whether or not the lease obligation to pay rent will remain intact after· a portion of the demised premises have been condemned. All other issues are collateral to this issue.

In W. T. Carter & Bro. v. State, 139 S.W.2d 661, 662, 663, writ ref., this Court said:

"Though the identical issues may not be involved in the two suits, if the is-. sues involved in the suit last filed are entirely dependent upon and concluded by the issues to be adjudicated in the suit first filed; then the second suit should be held in abeyance until the first suit is disposed of."

The principal issue here will, or should be, determined in the condemnation suit.

We believe that judicial courtesy, comity .and the law require us to defer, for the present at least, to the County Court of Travis County.

We desire to add to the authorities cited in our original opinion, Tex. Pipe Line Co. v. Ennis, 127 Tex. 470, 93 S.W.2d 148, 150, where a suit for damages filed in the District Court was held to present issues involved in a condemnation proceeding, the Court saying:

"It appears from the statement of the case that the issues presented by Ennis' trial petition, as well as the special issues submitted to the (jury), were necessarily involved in the condemnation proceeding pending in the county court when the present suit was filed, and were determinable in .that proceeding. Its jurisdiction had already attached. It is not contended that the county court proceedings were void. In fact their regularity was admitted upon the trial in that court. The district court erred in assuming jurisdiction and in hearing the case.

Gulf Coast Irr. Co. v. Gary, 118 Texas, 469, 14 S.W. (2d) 266, on rehearing 17 S.W. (2d) 774; International & G. N. R. R. Co. v. Pape, 62 Texas, 313.

\* \* \* \* \* \*

"For lack of jurisdiction of the district court to hear the case the judgments of that court and Court of Civil Appeals are reversed, and the case is dismissed."

Despite any legal pronouncement made herein, out actual decision is limited to holding that this is not a proper case for a declaratory judgment.

Both motions for rehearing are overruled. Our previous judgment is modified, however, to eliminate dismissal of this suit and, instead, we order it abated until final disposition of the condemnation suit or until disposed of by the parties.

Motions overruled.